UNITED STATES DISTRICT COURT
For the District of Montana
Helena Division

MAKWEEYAPEE D. WHITFORD,
Plaintiff,

v.s.

JIM SALMONSEN, Montana
State Prison (MSP) Warden;
C. JOHNSON, Montana
State Prison (MSP) Disciplinary
Hearings Officer,
Defendants

Cause No.

Hon.

Jury Trial Demanded

VERIFIED COMPLAINT FOR VIOLATION
OF CIVIL RIGHTS

Introduction

This is a civil rights action filed pro
se by Makweeyapee D. Whitford, a Montana
State prisoner, for damages and relief
under 42 U.S.C. §1983, alledging violation
of his right to freedom of Religion under
the First Amendment of the United
States Constitution and under the Religious
Land Use and Institutionalized Persons
**Act** 42 USC. §2000cc-1 and violation of
his right to Due Process under the Fourteenth
Amendment of the United States Constitution.

I. The Parties to This Complaint

## The Plaintiff

1. The Plaintiff, Makneeyapee D. Whitford, #3015941, ("MR. WHITFORD"), at all times relevant to this complaint was confined and continues to be confined by the Montana State Department of Corrections ("MDOC") at the Montana State Prison ("MSP") located at 700 Conley Lake Rd, Deer Lodge, MT 59722. He is an outspoken prisoner rights activist.

## The Defendants

2. The defendant, JIM SALMONSEN, shield # unknown, is the Warden of the Montana State Prison and is employed by the Montana State Department of Corrections at MSP located at 700 Conley Lake Rd, Deer Lodge, MT 59722. He is being sued in his individual and official capacities. At all times relevant to this complaint he was acting under the color of state law as the Warden of MSP. The warden knows and works with the plaintiff on a regular basis.

3. The defendant, C. JOHNSON, first name and shield # unknown, is a Disciplinary Hearings Officer at the Montana State Prison and is employed by MDOC to conduct disciplinary hearings. He is similarly situated at 700 Conley Lake Rd, Deer Lodge, MT 59722. He is being sued in his individual and official capacities. At

all times during this complaint he was acting under the color of state law as a Disciplinary Hearings Officer.

## II. Basis for Jurisdiction

4. Mr. Whitford is bringing his civil action against Montana State Prison officials for deprivation of rights secured by the United States Constitution and Federal Law.

5. The court has jurisdiction over plaintiff's claims of violations of federal constitutional rights under 28 U.S.C. §1331(1).

6. This civil action is filed against state actors for violations of the plaintiff's 1st Amendment Rights, 14th Amendment Rights, and Rights enacted under the Religious Land Use and Institutional Persons Act (RLUIPA) under 42 U.S.C. §2000cc-1.

7. The defendants Jim Salmonsen and C. Johnson were both acting under the color of state law while employed by the Department of Corrections at the Montana State Prison as a Warden and as a Disciplinary Hearings Officer, respectively, at all times during the events described in this complaint.

## III. Prisoner Status

8. The plaintiff, Mr. Whitford, is a prisoner who was convicted and sentenced in Lake County Montana as a state prisoner.

## IV. Statement of Facts

9. On November 15th, 2021 at 1915 hours, Correctional Officer Teruel discovered a 14 inch piece of steel wrapped in napkins and paper towels and tied by a piece of string to Mr. Whitford's window. The weapon was outside in the Conex area between High Side Units 1 and 2, below lower Delta Cell #5 in High Side Unit 1.

10. Mr. Whitford was the only individual living in Upper Delta Cell #5 and it was automatically assumed that the weapon belonged to Mr. Whitford because it was tied to his cell window.

11. Mr. Whitford was arrested and escorted to the Restrictive Housing Unit on or around December 2nd, 2021 and placed on Administrative Segregation status to await the conclusion of an investigation.

12. On December 8th, 2021 Mr. Whitford was formally charged with a disciplinary infraction. Infraction #4102 - Possession of a weapon.

13. The infraction simply stated, "On the above date and time, I Unit Manager A. Graham concluded an investigation and found that on 11-15-21 inmate Whitford was in possession of a home made weapon (shank) that was found by staff."

14. There was no further information. Mr. Whitford was placed on Pre-Hearing

confinement after being given notice of the charge that he was being infracted with. The process therefore turned from investigation, to prosecution of an infraction.

15. On the same day that Mr. Whitford was given a notice of his infraction, December 8th, 2021, Mr. Whitford wrote an offender/staff request (OSR) to the law library requesting two books: The Disciplinary Self-Help Litigation Manual & The Prisoner's Self-Help Litigation Manual. Both Legal Books. Those legal books were both sent to Mr. Whitford and he recieved them several days later.

16. Mr. Whitford wrote another OSR to the law library and requested DOC Policy and MSP Procedure on Disciplinary Investigations and Infractions. This request was denied Mr. Whitford and he was told that he either had to be on the indigent list or he had to have a copy card in order to buy copies of the policies.

17. This has been a consistent issue with Mr. Whitford and a systematic one at that. Mr. Whitford has filed several grievances on this same type of refusal. At one point, DOC Legal Bureau, Robert Lishman, pointed out a memo and directed MSP staff to provide free copies to inmates requesting legal materials and policy's procedures because of Mr. Whitford's complaints regarding

Detention block inmates.

18. While inmates are located on Level 0 (during Classification Decisions or Pre-Hearing Confinement, or Detention) they are not provided with any way to look at policy or procedure or other legal materials or law and have to specifically request it from the Law Library.

19. There are Edovo Tablets that have the policy and procedure on them, that have Lexis Nexis on them, but Level 0 inmates are not allowed to utilize them, even for short period of times or under direct supervision in order to research their disciplinary cases. These Tablets are available on everyother Level and classification but those on Detention Blocks.

20. The Law Library per DOC Policy & MSP Procedure are responsible for ensuring that inmates have access to Policy & Procedure and other legal materials for access to the courts purposes.

21. The next day, on December 9th, 2021 Mr. Whitford requested a time extention in which to prepare for his disciplinary hearing and was granted a hearing continuation by Disciplinary Hearing Investigator (DHI), Carrie Walsted.

22. Also on December 9th, 2021 Mr. Whitford wrote to the Law Library Bureau chief, Director of Education, concerning the denial of his access to

Policy 3 Procedure. Reminding her that
this issue had been an old issue and
that every time he was infracted and
brought to level 0 this continues to
happen. And, that this was the third
time that he had to address the issue.

23. Each time that this issue occurs,
Mr. Whitford has been successful at
forcing administration to provide him
legal materials and Policy 3 Procedure, but
only after his time to prepare a
defense for his disciplinary hearing
has elapsed. Which violated his right
to be able to prepare a defense. Such
as in the instant case.

24. On December 10th, 2021 Mr. Whitford
attempted to get Policy 3 Procedure
from the Unit Sergeant, who explained
that he would need to kite the law
library in order to recieve access to
Policy 3 Procedure.

25. Mr. Whitford sent several OSK's
to the Disciplinary Department requesting
more time to be able to prepare a defense
and explaination. He explained the situation.
This was again a systematic denial,
as his OSK's were never responded to and his
requests went unheard.

26. Mr. Whitford prepared a 4 page
statement to the disciplinary hearings
officer as best as he could, in an
attempt to prepare for his disciplinary case.

27. Mr. Whitford's disciplinary hearings officer was C. Johnson, Mr. Whitford requested a continuance and was denied. He then went on to try to explain his grounds for dismissing the infraction.

28. He explained that the Notice he was given was lacking. Mr. Whitford was given a copy of the incident report that was given to him by Carrie Walsted the DHO. Missing were the pictures that Mr. Whitford requested. He also requested to see any video evidence and he requested to see any and all confidential information that did not violate public disclosure law.

29. Mr. Whitford had sent in a request explaining there was no evidence connecting him to the weapon tied to his window where neither him nor anyone in his cell could see it.

30. Mr. Whitford explained that there was more than a 51% probability that someone else could have put the weapon where it was at. And, that the weapon could have been there even before he had moved into the cell as he had only been there a short time.

31. Mr. Whitford only seen photos of the floor and his cell while at the hearing and was never given

access to them prior to his disciplinary hearing, although the DHO did send him copies of the photo's afterwards. The disciplinary hearing officer found him guilty regardless of this fact.

32. The DHO didn't listen to anything Mr. Whitford said, refused to give him a continuation even after showing him evidence that Mr. Whitford never recieved 24 hours in advance and against Mr. Whitford's objections. This was a blantant disregard for Mr. Whitford's due process right to have an unbiased and fair disciplinary hearings office.

33. Mr. Whitford had requested all of the back reports, incident reports, pictures, video, etc. Specifically, Mr. Whitford requested information pertaining to the "routine searches" of the conex area in order to determine how often the conex area is searched and what kind of search routine was considered a routine search.

34. Mr. Whitford also requested to see physical evidence and the actual weapon, which did not happen.

35. Mr. Whitford also requested help with his defense from an inmate helper due to the nature of confidential information. A staff member who could move around and go about in order

to discover any information that Mr. Whitford could not. This request wasn't even addressed.

36. Ms. Whitford requested law in order to determine what the correct standard of law was, but his request was ignored. Recently, HB 763 (now codified as 53-30-701 to 725, MCA) changed the law and Mr. Whitford was told that it also changed the standard of proof, either in the Policy 3 Procedure that came from the law or the law itself.

37. Mr. Whitford also brought up the 6-month infraction free stipulation as a sanction to being found guilty of a major infraction. This was also ignored.

38. In fact, everything that Mr. Whitford wrote in his disciplinary statement went ignored by DHO C. Johnson. This was caught in the disciplinary recording, when the DHO 'tired of hearing Mr. Whitford and cut the disciplinary hearing short. He made his decision then and there an never giving the written statement any thought at all.

39. DHO C. Johnson, found Mr. Whitford guilty. His reasoning was simply, "Offender was in possession

Page 10 of 34

of a sharpened instrument/weapon." He didn't explain any further. He relied on the infraction report, confidential information, and photo's to find Mr. Whitford guilty. He gave Mr. Whitford 30 days Detention.

40. On December 15th, 2021, Mr. Whitford submitted a Disciplinary Appeal to the Warden. In his appeal he reiterated everything that he said at the hearing and asked that the Warden look at the record. He brought up the fact that his Due Process was violated to 24 hour notice, requested documentation, general summary of confidential information, access to policy & procedure, law, and legal materials.

41. Mr. Whitford asked for the Warden to review the record, OSR's, and recording of the hearing. His appeal was affirmed on January 13th, 2022.

42. In addition to the 30 days of Detention, Mr. Whitford by proxy was restricted from practicing certain aspects of his religion for a 6-Month period as a by-product punishment of the major infraction that he recieved.

43. The religious activities that are affected by the 6-month infraction-Free Stipulation restriction include

Drum Group; Sweat set-up; the ability to be elected and to hold pipe carrier position; and the ability to be present and to participate in the Annual Spiritual Gathering (A.K.A. Powwow).

## V  Statement of Claims

### Violation of Due Process
### Liberty Interest

44. Mr. Whitford brings fourth two different aspects of the same liberty interest that he presents to the court: (1) The punishment via a sanction on his Religious Freedom; and (2) Disciplinary Hearing due process based on the six-month infraction free stipulation that acts as a sanction on Mr. Whitford's ability to practice his Religious Freedom.

45. In either case, Mr. Whitford's First Amendment right to practice his religion through the Freedom of Religion Clause to the United States Constitution "gives rise in such an unexpected manner as to give rise to protection by the Due Process Clause of its own Force. Thus, the "atypical and significant hardship" standard does not apply to Mr. Whitford's liberty analysis.

46. The reason that the Religious Freedom of the plaintiff should pass muster in this manner is obvious. The

First Amendment prohibits the government from interfering with the "free exercise" of religion. It is well known that one should not be punished for exercising their religion or be prohibited from participating in their religion as a punishment, which is basically the same thing.

47. The right to Free Exercise of Religion then is a substantial liberty interest, once it is restricted because of a disciplinary finding of guilty.

48. The practice of utilizing Religion and the right to free exercise thereof as a sanction should be unconstitutional on its face. However, if it is found otherwise, review of disciplinary hearings should be done on substantive grounds.

## Violation of Due Process
### Particular Due Process Violations

49. Notice - Mr. Whitford had a right to a sufficient Notice with advance Notice 24 hours prior to his disciplinary hearing.

50. Mr. Whitford has a right to be given a Notice of the disciplinary hearing charges against him. This Notice must include in it enough information in order to allow Mr. Whitford the ability to prepare a defense against the charges against him.

51. In this Notice that was given to Mr. Whitford, he was deprived of that due process right. The Notice was not sufficient in order to give Mr. Whitford notice of the action that he was doing wrong. Furthermore, there was nothing in the Notice that casually connected Mr. Whitford to the weapon that he was being blamed for possessing.

52. Had Mr. Whitford been given proper Notice, the Notice would have included a general summary of the confidential Information being utilized against him and he could of then had some type of idea about what he was being charged with. What actions caused him to possess the weapon. But, there is nothing in the Notice connecting him to the weapon other than it was tied to his cell. There was no summary of confidential Information to provide a casual connection between Mr. Whitford's behavior and the rule infraction.

53. The weapon could of been put there by one of the 24 hour people being housed on Mr. Whitford's block, or it could have been put there by the prior occupants of the cell.

54. There was no direct evidence

connecting Mr. Whitford to the weapon.

55. There was a picture of Mr. Whitford's cell floor of old marks that appear to be an area where something was sharpened. These pictures were never given to Mr. Whitford 24 hours in advance of the disciplinary hearing in order for Mr. Whitford to prepare a defense. But, Montana State Prison was built in the early 1980's, and many cells have different types of marks like these. In fact, there is such distruction of cells that officer's can't keep up with the amount of destruction that occurs within each cell.

56. There was a photo of a piece of sheet hooked to the window, which was misleading. Had Mr. Whitford been given pictures prior to his hearing in order to prepare a defense, he could of explained that that sheet wasn't even hooked to anything other than the window and was used to keep the window closed. Mr. Whitford had put in a grievance to get the window ceild shut, because they are normally ceild and it was freezing outside. When maintenence finally arrived, they actually welded

the sheet in place and it is most
likely still there to this day.

57. A more questioning thought
is why Mr. Whitford would ask
for the window to be cield shut
if he knew that a weapon was
outside and attached to his window.

58. And, what of the so called
"string" that was attached to the
window? A piece of sheet as thick
as that certainly couldn't be called
a piece of string. And where are
the pictures of the string?

59. Mr. Whitford was never given
any type of documentary or physical
evidence that he requested in order
to prepare a defense. Mr. Whitford
requested Policy 3 Procedure regarding
investigative procedures. But, never
recieved them. He requested law and
legal materials in order to research
the law so that he could prepare
a defense using up-to-date law.
In fact, MSP officials went above
and beyond denial and attempted
to charge him a price in order
to exersize his legal right to due
process of the law, in order to prepare
a defense.

60. Mr. Whitford attempted to
request information that would of told
him how often the "Conex" area was

searched on a so called "routine basis".
This information would of told how
long the weapon could of been in
that area without anyone searching.
If it was longer than Mr. Whitford
had been living in that cell, than
it could of pointed to evidence that
the weapon belonged to someone else prior
to Mr. Whitford moving into that cell.

61. Mr. Whitford requested staff
assistance in order to help him with
his defense due to the complexity of
the case. This request was blantantly
ignored.

62. Mr. Whitford requested the standard
of Proof and to review Policy & Procedures
and House Bill 763 (now codified as
MCA, 53-30-701 to-725) in order to
determine the standard of Proof so that
he could determine the correct statistical
correlation regarding the probability of
someone having access to the area
where the weapon was found. Under
preponderance of evidence standard, if
there is a 51% probability or higher of
another human being having access to
or knowing about the weapon, than
Mr. Whitford would not be able to legally
be found guilty of the infraction
because of the type of standard of
proof.

63. The confidential summary

that Mr. Whitford asked for and didn't recieve, could of told Mr. Whitford a little more about exsactly how his behavior violated institutional rules. Under public disclosure laws, only identifying information can be withheld. All non-identifying information has to be disclosed. At the very minimum, a "summary" of confidential information should have been disclosed in order to connect Mr. Whitford's conduct to the rule violation and to give Mr. Whitford notice of that specific conduct. If the conduct could not be legidimately connected to the rule violation than Mr. Whitford should of never been charged with an infraction. However, if there was a summary of confidential information it would of allowed Mr. Whitford the ability to prepare a defense, while protecting the source of information. To say that there is confidential information without saying more is arbitrary to say the least.

64. Again, Mr. Whitford is systematically denied Policy 3 Procedure, legal materials (such as case law), and the ability to prepare a defense. In fact, each and every inmate that recieves an infraction and goes to the Detention Blocks are denied the ability to prepare a defense

because of MSP procedures and practices of not allowing inmates to see the policy & procedures that they are suppose to abide by, the ability to access case law and statutory law. This is a common everyday thing at MSP. Although in the same units, inmates on other levels are given access to Edovo Tablets that have policy & procedures, access to Lexis Nexis, and every other law for free. Not for a fee as on the Detention Blocks.

65. All of these things violate Mr. Whitford's right to due process of the law, under the U.S. constitution.

## Violation of First Amendment Right to Free Exercise of Religion

66. Mr. Whitford is an American Indian and practices the Okan religion of the Blackfeet Nation as well as the general religious principals of all Native American people.

67. These principals include the right to be able to carry a pipe and to act as community pipe carrier if so elected by his people.

68. The sacred pipe is a central tenet of all American Indian people and is considered the primary means of communication with the Great Spirit (A.K.A. Great Mystery).

69. Mr. Whitford contends he has the right to carry a personal pipe as well as the right to be elected as the communal pipe carrier if the people so choose.

70. Mr. Whitford is a pipe holder and has his own medicine pipe on the streets.

71. American Indian principals of religion also include the ability to be a part of the Drum Group or a Drum Group.

72. The powwow drum, is a big drum that usually consists of six to twelve individuals or more, who keep the drum beat of the people.

73. The drum beat of the people refers to the heart beat of the people, which is said to be the primary beat of the spirit of the American people. In fact, it is said that once the drum beat dies, the people will die.

74. Because of this reason the individuals who drum and sing are considered the primary keepers of the drum beat.

75. This refers strictly to the big powwow drums which are used in spiritual Gatherings (A.K.A. powwow's). As opposed to hand drums which are small individual drums made for individual singers and drummers.

76. Mr. Whitford is a drummer and singer.

77. Mr. Whitford contends that he has the right to drum and to sing.

78. The Sweat set-up crew consists of individuals, usually four or five people, who prepare the sweat and get it ready for use, including but not limited to starting the site.

79. The pipe carrier is the primary person who directs sweat set-up along with the road-man (i.e., the person running the sweat on that particular day).

80. Mr. Whitford contends that he has a right to be elected pipe carrier and roadman and therefore the right to attend sweat set-up in order to prepare the sweat for ceremonial use.

81. The most and perhaps the biggest ceremony of the Native American people other than the Sun Dance, is the Spiritual Gathering (A.K.A. Powwow).

82. The Spiritual Gathering brings together the Native American people in a gathering of thanksgiving, joy, and happiness. It is the primary unifying force of the Native American people and therefore a major central tenant of

the Native American people.

83. These same activities (i.e., Pipe Carrier, Drum Group, Sweat-set up, and Spiritual Gatherings) are restricted for 6 months at a time whenever someone who practices the Native American way of life are infracted with a MSA, or infraction.

84. Mr. Whitford was infracted for a possession of a weapon which is considered a major infraction and thus was restricted from practicing these specific portions of his religion for 6 months, even though he did not violate those ceremonial activities, and even though the infraction was unrelated to the ceremonial activities being restricted.

85. Mr. Whitford has been involved in the Native American way of life all his life and has been a legal, ethical, and religious champion of oppression against his Native American rights since he entered the Montana State Prison. He has and continues to challenge the status quo in regards to Native American traditions, beliefs, and culture in prison. Therefore, his sincerity should not be questioned.

86. He is sincere about his Native American Beliefs as they relate to the four activities above.

87. There is no question that the

prison system and warden have a
legitimate penological concern in
maintaining a secure facility.

88. However, the 6 month infraction
free stipulation is illogical and
arbitrary as it relates to the
religious activities described above.

89. The number one reason that it
is arbitrary and irrational is
because it allows broad discretion to
prison officials who may have alterior
motives and who may want to
ensure that Native American inmates
are not able to participate in some of
these beloved ceremonies, whether for
retalitory purposes, racist purposes, or
otherwise.

90. The next reason that makes it
arbitrary and illogical is that Native
Americans who have not violated the
ceremonies themselves and who are
infracted for reasons unrelated to the
ceremonial functions are punished
regardless of whether or not there is
a connection between the infraction and
the ceremonial ~~infraction~~ function. If
the infraction actually happen in
connection with the ceremonial function
it would make more sense, but it
doesn't.

91. The third and final reason that
it is arbitrary and illogical is because

the US Constitution implys that no person shall be punished for practicing their religion and that there should be free exersize there of. This should include restricting people from practicing their religion for 6 months at a time every time that they get an unrelated infraction.

92. There are alternative means of practicing the Native American religion as a whole. Inmates are still allowed to go to sweats and pipe ceromonies, they are still allowed to drum or hand drums and sing, they are still allowed to smoke the pipe.

93. But, they are not allowed to participate in specific's in relation to those central tenents such as drum and sing at the Spiritual Gathering or otherwise participate in Spiritual Gathings by dancing or observing. They are not allowed to sing and drum on the big drums which have different songs than songs sung on hand drums and songs ment for different purposes. They are not allowed to carrie the pipe for communial reasons even if the people want them elected for their specialized knowledge or to participate in sweat set up as a Roadman or pipe carrier.

94. The impact that these rights

have on inmates and guards are minimal at best. All of the religious functions described above are already in practice, only not everyone is able to attend the way that they should be. In the spiritual gathering and the sweat-set up, there are limited amounts of individuals who can even attend.

95. The number one ready alternative to the 6 month infraction free stipulation would be to apply it only to those who are found guilty of an infraction that is actually related to one of these ceremonial activities. Instead of punishing people first and asking questions later, there should be an inquiry as to whether or not the infraction was committed at one of these ceremonial functions and if the infraction violated institutional conduct that actually has a bearing on the religious function. Such as bringing in drugs in the visiting room. To have a spiritual gathering, it has to be in the visiting room. Therefore the prohibited conduct has a rational connection to the visiting room where the spiritual gathering will be held. But if it didn't have a bearing on the visiting room or the ceremony being held in that room then it should

not be prohibited. For example, someone who gets into trouble for sneaking fruit out of the dining room, shouldn't not be allowed to go to a spiritual Gathering because the infraction has no bearing on the activities taking place within the visiting room. To say that they might sneak drugs back from the visiting room would be arbitrary and irrational because someone sneaking drugs back faces a criminal offense, while someone sneaking fruit back doesn't.

96. Therefore there is no reasonable penological interest in this 6 month infraction free stipulation being applied to each and every major infraction and the regulation itself impinges on the plaintiff's constitutional right to practice his religion freely.

Violation of the Religious Land
Use and Institutionalized persons
Act, 42 U.S.C. 32000c-1.

97. For this claim, the plaintiff re-states the paragraphs #66-through-to #96 above in this complaint and contends that these actions violate the RLUIPA as stated in this section.

98. The state action in this incident has caused a substantial burden on the plaintiff's First Amendment

Religious rights by restricting him from participating the four activities described above for 6 months because of a rule violation and infraction unrelated to those activities and that has absolutely no bearing on them or how they are preformed.

99. As stated above, it isn't the least restrictive means available to prison officials and they can ~~consist~~ afford to wait until the plaintiff actually violates a rule and recieves an infraction that actually does have a bearing on the religious exersize before punishing him. And, instead of punishing him for unrelated activities.

100. The plaintiff doesn't argue that it is not in the furtherance of a compelling governmental interest, only that it is illogical, irrational, arbitrary, and that it is not the least restrictive means available.

## VI INJURIES

101. The plaintiff's right to prepare a defense in violation of his fourteenth Amendment due process rights has been violated and resulted in the plaintiff being re-classed to Maximum custody for a long term program.

102. The plaintiff's right to freely practice his religion has been restricted

regarding four primary religious tenets of his religion.

103. No physical injuries resulted, other than bodily restraint via classification and restrictions.

## VII   REQUESTED RELIEF

WHEREFORE the plaintiff requests this court to grant the following relief:

104. A declaration declaring that the plaintiff right to due process at his disciplinary hearing was violated by the hearings officer.

105. A declaration declaring that the practice of utilizing a six-month infraction free stipulation regarding major infractions that are unrelated to and bear no relation to the following religious activities: Pipe Carrier, Sweat Set-up, Drum Group, and spiritual Gatherings... violates the plaintiff's rights.

106. Award compensatory damages for the time it took for plaintiff to challenge the results of his disciplinary hearing and the 6-month period that the plaintiff was restricted from participating in these religious activities.

107. Award punitive damages for the violation and systemic failure of the prison officials to provide due process

in disciplinary hearings.

107. Award punitive damages for the time that plaintiff was restricted from participating in his religious activities and for punishing the plaintiff because of his religion.

108. Grant a temporary restraining order preventing the use of the 6 month infraction free stipulation in relation to the activities of Pipe Carrier, Sweat Set-Up, Drum Group, and Spiritual Gatherings as well as notice to general population of that fact.

109. Grant a preliminary injunction preventing the use of the 6 month infraction free stipulation in relation to the activities of Pipe Carrier, Sweat Set-Up, Drum Group, and Spiritual Gatherings as well as notice to general population of that fact.

110. Grant permanent injunction, mandatory injunction, and prohibitory injunction preventing the use of 6 month infraction free stipulation in relation to the activities of Pipe Carrier, Sweat Set-Up, Drum Group, and Spiritual Gatherings regarding infractions that have no direct bearing on those activities. Notice general population of that fact, and begin to revise Policy & Procedure to coincide with the injunctions.

111. Grant a re-hearing or in the alternative dismiss the major infraction through permanent mandatory injunction and prohibit future violations of same due process violations.

## VIII Exhaustion of Administrative Remedies

112. The plaintiff's claims arose while confined in the Montana State Prison.

113. Montana State Prison does have a grievance procedure and disciplinary appeal process.

114. The grievance system covered some of the claims but most of the claims were covered by the disciplinary appeal process.

115. Policy issues are grievable and therefore the 6 month infraction free stipulation was grievable.

116. The plaintiff utilized the disciplinary appeal process regarding the facts of this case, but has also grieved the 6 month infraction free stipulation in general in the past.

117. The grievances and disciplinary appeal process was filed in MSP and claimed essentially the same things as stated above in the statement of claims.

118. The plaintiff brought the due process and freedom of religion claims to the

attention of the disciplinary hearing
officer and to the attention of
the MSP Warden during the disciplinary
hearing and appeal. The plaintiff
also grieved the six-month infraction
free stipulation in the past.

1190. The plaintiff has brought these
and similar claims to prison officials
in the past, all the way till the present,
and has grieved or appealed disciplinary
decisions in an attempt to inform the
entire MSP officials staff to no avail.
His grievances and appeals have fallen
on deaf ears for years now and his
attempts to document these types of
issues in a systematic way encompass
thousands of pages of documentation. His
activism has been relentless.

## IX ~~XXXX~~ Previous Lawsuits

1200. The plaintiff has never to his
knowledge had a lawsuit dismissed based
on the "three strikes rule" of 28 USC
§ 1915(g).

1210. The plaintiff has never filed any
other suits with the same facts involved
in this case.

1220. The plaintiff has filed one suit
(Cause No. 6:20-cv-00080-SEH) that
involved similar issues but this is
based on different circumstances. That
case was filed against Redignard D.

Michael. That case is on appeal to the 9th Cir. It was dismissed with prejudice after the plaintiff failed to amend it within a certain time frame which the plaintiff disputes.

173. The plaintiff has filed one other lawsuit besides the one mentioned in paragraph 172. Cause No. 6:23-cv-00012-sell. That lawsuit is against Robert Orthno. All of these cases mentioned are in the US Dist Court Div. of Helena. That case is still pending and is in the discovery stage.

## X Certification and Closing

174. Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements

of Rule 11.

Signature and Address

125. Signed this ___ day of July, 2023.

Signed _____
Makwaeyape D. Whitford
#3015941
Montana State Prison
700 Conley Lake Rd
Deer Lodge, MT 59722

## VERIFICATION

STATE OF MONTANA )
                 ) AFFIDAVIT OF MAKWEEYAPEE
COUNTY OF POWELL )        D. WHITFORD

126. Mr. Whitford, Makweeyapee D., being first duly sworn, deposes and says:

127. That I am the affiant for this complaint for civil rights violation above and do hereby declare and swear that the facts stated in that document are true and correct to my knowledge and belief, and facts stated on information and belief are true and correct to my knowledge and belief.

Done this 27 day of July, 2022.

Signed, _Maknee???ee D. Whitford_
Maknee???ee D. Whitford
#3015941
Montana State Prison
700 Conley Lake Rd
Deer Lodge, MT 59722

[ Notary Public ]

JOEL SCHEETT
NOTARY PUBLIC for the
State of Montana
Residing at Anaconda, Montana
My Commission Expires
April 19, 2026



Joel Scheett
Joel Scheett
19, April, 2026
Anaconda, MT

NOTE: 25 Pages of Documentation attached in order to supplement the record.