UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| MAKUEEYAPEE D. WHITFORD, Plaintiff, | Cause No. |
| v.s. | CV-22-70-H-SEH |
| BRIAN GOOTKIN, Director of the Department of Corrections; JIM SALMON-SEN, Montana State Prison Warden, Defendants | Hon. Sam E. Haddon |
| | Amended Verified Complaint for Violation of Civil Rights |

Jury Trial Demanded

## Introduction

This is a civil rights action filed pro se by Makueeyapee D. Whitford, a Montana State prisoner, for damages and relief under 42 U.S.C §1983, alledging violation of his Religious Freedom under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §2000cc-1.

## I. The Parties to this Complaint

### The Plaintiff

1. The plaintiff, Makueeyapee D. Whitford, #3015941, ("Mr. Whitford"), at all times relevant to this complaint was confined by the Montana State Department of

Corrections ("DOC") at the Montana State Prison ("MSP") located at 700 Conley Lake Road, Deer Lodge, MT 59722. He is an outspoken prisoners rights activist.

The Defendant's

2. The defendant Brian Grootkin, shield # unknown, is the Director of the entire Department of Corrections in Montana and employed by the State of Montana. His duties require that he sign off and review all policy in order for them to become final, to oversee DOC policy direction, and to ensure all facilities in Montana State submit MSP procedures that are within the bounds of those policies. He is being sued in his official capacity. At all times relevent to this complaint he was acting under the color of state law as director of DOC.

3. The defendant, Jim Salmonsen, shield # unknown, is the Warden of the Montana State Prison and is employed by the Montana Department of Corrections at MSP located at 700 Conley Lake Road, Deer Lodge, MT 59722. His duties require that he sign off and review all MSP procedures in order for them to become final, to

oversee procedure direction, and to
ensure that the Montana State
Prison Procedures are within the
bounds of DOC Policy. He is being
sued in his official capacity. At
all times relevent to this complaint
he was acting under the color of
state law as the Warden of
MSP.

## II. Basis for Jurisdiction

5. Mr Whitford is bringing his civil
action against Montana DOC and
MSP officials for deprivation of rights
secured by the United States
Constitution and Federal laws.

6. The Court has jurisdiction over
plaintiffs claims of violation of federal
constitutional and statutory rights under
28 U.S.C. §1331(1).

7. This civil action is filed against
state actors for violation's of the
plaintiff's Religious freedom under the
Religious Land Use and Institutionalized
Persons Act ("RLUIPA"), 42 U.S.C. §2000cc-1.

8. The defendants, DOC Director Brian
Gootkin and MSP Warden Jim ~~Salmonsen~~
Salmonsen were both acting under
the color of state law at all times
during the events described in this
complaint.



## III. Prisoner Status

9. The plaintiff is a prisoner who was convicted and sentenced in Lake County Montana as a state prisoner.

## IV. Statement of facts

10. On November 15th, 2021 at 1915 hours, Correctional Officer Teruel discovered a 14inch piece of steel wrapped in napkins and paper towels and tied by a piece of string to Mr. Whitford's Window. The weapon was outside in the Lower area between High side Units 1 3 2, below Lower Delta cell #5 in High Side Unit 1.

11. Mr. Whitford was the only individual living in Upper Delta #5 and it was automatically assumed that the weapon belonged to Mr. Whitford because it was tied to his window.

12. Mr. Whitford was arrested and escorted to the Restrictive Housing Unit on or around December 2nd, 2021 and placed on Administrative Segregation status pending investigation.

13. On December 8th, 2021, Mr. Whitford was formally charged with a disciplinary infraction. Infraction #4102 - Possession of a weapon.

14. Mr. Whitford prepared a 4 page

statement to the disciplinary hearings officer as best as he could in preparation for his disciplinary hearing.

15. Mr. Whitford was eventually called out for his disciplinary hearing which he attended. At that hearing he explained his grounds for dismissal of the infraction.

16. Among those grounds he brought up the fact that the 6-month infraction free stipulation on his religious activity was illegal.

17. The Disciplinary Hearings Officer disregarded Mr. Whitford's response and ~~found~~ found Mr. Whitford guilty of possession of a weapon. Ordering Mr. Whitford 30 days of Detention.

18. On December 15th, 2021, Mr. Whitford submitted a Disciplinary Appeal to the Warden. In his appeal he reiterated everything at his hearing and asked that the Warden review the record. He brought up the fact that the six-month infraction free stipulation violated his religious rights and asked for a dismissal.

19. Mr. Whitford asked for the Warden to review the record, OSR's, and recording of the hearing. His appeal was affirmed January 13th, 2022.

19. In addition to the 30 days of Detention, Mr. Whitford was restricted

Page 5 of 23

from practicing certain aspects of
his religion for a 6-month period,
as a by-product punishment of the
major infraction that he recieved.

20. The religious activities that are
affected by the 6-month infraction
free stipulation include Drum Group,
sweat set-up, the ability to be elected
Pipe carrier in order to hold the pipe
carrier position, and the ability to
be present and to participate in the
Annual Spiritual Gathering (A.K.A. Powwow).

## V Statement of claims

### Violation of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1

21. Mr. Whitford is an American
Indian and practices the Okan
religion of the Blackfeet Nation as
well as the general religious
principals of all Native American
people.

22. These principals include the
right to be able to carry a pipe and
to act as community pipe carrier
if so elected.

23. The sacred pipe is a central
tenet of all American Indian people
and is considered the primary

means of communication with the Great Spirit (A.K.A. Great Mystery).

24. Mr. Whitford contends he has the right to carry a personal pipe as well as the right to be elected as the communal pipe carrier if the people so choose.

25. Mr. Whitford is a pipe holder and has his own medicine pipe on the streets.

26. American Indian principals of religion also include the ability to be part of the Drum Group or a Drum Group.

27. The Powwow drum, is a big drum that usually consists of six to twelve individuals or more in order to keep the drum beat of the people (A.K.A. The heartbeat of the people).

28. The heartbeat of the people is said to be the primary beat of the spirit of the American Indian people. In fact, it is often said that if the drum beat dies, the people will die because there will be nobody left to keep it going.

29. Because of this reason the individuals who drum and sing are considered the primary keepers of the drum beat.

30. This refers strictly to the

big powwow drums which are
used in spiritual Gatherings
(A.K.A. Powwow's), as opposed to hand
drums which are small individual
drums made for a single person.

31. Mr. Whitford is a Powwow singer
and drummer and contends that
he has a right to drum and sing.

32. The sweat set-up crew consists
of individuals, usually four or five
people, who prepare the sweat and get
it ready for use, including but not
limited to starting the fires.

33. The Pipe Carrier is the primary
person who directs sweat set-up along
with the "Road Man" (i.e., the person who
is going to run the sweat on that
particular day.)

34. Mr. Whitford contends that he has
the right to be Pipe Carrier and Road
Man and to be selected by them in order
to attend sweat-set up and to be a
part of the sweat-set up crew.

35. The most and perhaps the most
well known ceremony of the American
Indian people, other than the Sundance,
is the Powwow/Spiritual Gathering.

36. The Spiritual Gathering brings
together Native American people in
a gathering of thanksgiving, joy,
and happiness. It is the primary
unifying force of Native American

Page 8 of 23

people and therefore a major central tenent of the Native American people.

37. These four activities (i.e., Pipe Carrier, Drum Group, Sweat set-up, and Spiritual Gatherings) are restricted for 6 months at a time whenever someone who practices the Native American way of life are infracted with a major infraction and found guilty of committing that infraction regardless of due process.

38. Mr. Whitford was infracted for possession of a weapon which is considered a major infraction and thus was restricted from practicing these specific tenents of his religion for 6 months; although, he never violated these ceremonial activities and even though the infraction was unrelated to the ceremonial activities being restricted.

39. Mr. Whitford has been involved in the Native American way of life. He has been a legal, ethical, and religious champion of the oppressions committed against Native American rights since he entered MSP. He has and continues to challenge the status quo in regards to American Indian traditions, beliefs,

culture in the prison. Therefore, his sincerity should not be a question.

40. He is sincere about his beliefs as they relate to the four religious activities above.

41. There is no question that the prison system have a legitimate penological concern in maintaining a secure facility.

42. However, the 6-month-infraction-free-stipulation is illogical, unethical, and arbitrary as it relates to the religious activities above.

43. The number one reason that it is arbitrary and irrational is because it allows overlybroad discretion to prison officials who may have alterior motives and who may want to ensure that Native American inmates are not able to participate in some of these beloved ceremonies whether for retalitory ~~purposes~~ purposes, racist purposes, or otherwise.

43. The next reason that makes it arbitrary and illogical is that Native American's who have not violated the ceremonies themselves and who are infracted for reasons unrelated to the ceremonial functions are punished regardless of whether or not there is a connection between

infraction and the ceremonial function. If the infraction actually happen in connection with the ceremonial function it would make more sense, but it doesn't

44. The third and final reason that it is arbitrary and illogical is because the U.S. Constitution implys that no person shall be punished for practicing their religion and that there should be free exersize there of.

45. This concept should be applied to include restricting people from practicing their religion for 6 months every time that they get an unrelated infraction.

46. There are alternative means of practicing the Native American religion as a whole. Inmates are still allowed to go to sweats and pipe ceremonies, they are allowed to drum on handdrums at sweat (and only have enough time for that), they are still allowed to smoke the pipe.

47. But, they are not allowed to participate in specifics in relation to those central tenets such as drumming and singing at the spiritual Gatherings or otherwise participate in spiritual Gatherings by dancing or observing. They are not allowed to sing and

drum on the big drum which
have different songs than songs
sung on hand drums and songs
meant for sweat ceremonies, or other
purposes. They are not allowed to
carrie the pipe for communial
reasons even if the people want
them elected for their specialized
spiritual knowledge or to participate
in sweat set-up as a Road Man
or pipe carrier.

48. The impact that these rights
have on inmates and guards are
minimal at best. All of the religions
functions described above are already
in practice, only not everyone is
able to attend the way they
should be. In the spiritual gathering
and sweat set-up, there are limited
amounts of individuals who can
even attend.

49. The number one ready alternative
to the 6 month infraction free
stipulation would be to apply it only
to those who are found guilty
of an infraction that is actually
related to one of those ceremonial
activities. Instead of punishing people
first and asking questions later,
there should be an inquiry as
to whether or not the infraction
was committed at one of these

ceremonial functions and if the infraction violated institutional conduct that actually has a bearing on the ~~reli~~ religious function. Such as bringing in drugs in the visiting room. To have a spiritual Gathering, it has to be in the visiting room. Therefore the prohibited conduct has a rational connection to the visiting room where the spiritual Gathering will be held. But if it don't have a bearing on the visiting room or ceremonial function being held in the visiting area, or otherwise, then it should not be prohibited. When entering the visiting room on a normal basis and not during a spiritual Gathering, everyone is allowed to go to their visits regardless of whether there is an infraction within the last 6 months or not. Only when someone violates visiting room policy are they restricted from the visiting room. So why are spiritual Gatherings different when they should be the same?

50. Therefore, there is no reasonable penological interest in this 6 month infraction free stipulation being applied to each and every major infraction and the regulation itself impinges on the plaintiff's constitutional

right under the Religious Land Use and Institutionalized persons act.

51. The state action in this incident has created a substantial burden on the plaintiff First Amendment religious rights by restricting him from participating in the 4 activities described above for 6 months because of a rule violation and infraction unrelated to those activities and that has absolutely no bearing on them or how they are performed.

52. As stated above, it isn't the least restrictive means available to prison officials and they can afford to wait until the plaintiff actually violates a rule and recieves an infraction that actually does have a bearing on the religious exersize before punishing him. Instead of punishing him for unrelated activities.

53. The plaintiff doesn't argue that it is not in the furtherence of a compelling governmental interest, only that it is illogical, irrational, arbitrary, and that it is not the least restrictive means available.

## VI INJURIES

54. The plaintiff's right to freely practice his religion regarding four primary religious tenets was restricted for a 6 month period.

55. Each additional Major Infraction that the plaintiff recieves in the future will result in his right to freely practice his religion regarding these four primary religious tenets will be restricted for a 6 month period.

56. No physical injury resulted.

## VII REQUESTED RELIEF

Wherefore the plaintiff requests this court to grant the following relief:

57. A declaration declaring that the practice of utilizing a 6 month infraction free stipulation regarding major infractions that are unrelated

and that bear no relation to the following religious activities — Pipe Carrier — Sweat Set-Up — Drum Group — and spiritual Gatherings ... violate the plaintiff's rights under RLUIPA.

58. Award compensatory damages for the time it took for plaintiff to challenge the results of his disciplinary hearing and the 6 month period that the plaintiff was restricted from participating in his religious activities.

59. Award punitive damages for the time that plaintiff was restricted from participating in his religious activities and for using his religion as punishment.

60. Grant a temporary restraining order preventing the use of the 6 month infraction free stipulation in relation to the activities of Pipe Carrier, Sweat Set-Up, Drum Group, and spiritual Gathering as well

Page 16 of 23

as a notice to the general population
of that fact.

61. Grant permanent, mandatory, and
prohibitory injunction preventing
any further use of the 6 month
infraction free stipulation in relation
to the activities of Pipe Carrier, Sweat
set-up, Drum Group, and spiritual
Gatherings regarding infractions
that have no direct bearing on those
activities; Notice general population
of that fact; and, initiate revisions
of policy and procedure at DOC and
MSP that coincide with injunction.

62. Grant a re-hearing or in
the alternative dismiss the major
infraction through permanent mandatory
injunction and prohibit future
violations of the same.

### VIII EXHAUSTION OF REMEDIES

63. The plaintiffs claims arose at
the Montana State Prison.

64. Montana State Prison does have a grievance procedure and a disciplinary appeal process.

65. The grievance system covered some of the claims but most of the claims were covered by the disciplinary appeal process.

66. Policy issues are grievable and therefore the 6 month infraction free stipulation was grievable.

67. The plaintiff utilized the disciplinary appeal process regarding the facts of this case, but has also grieved the 6 month infraction free stipulation in general using the grievance process in the past.

68. The grievances and disciplinary appeal process was filed at MSP and claimed essentially the same things as stated above in the statement of claims.

69. The plaintiff brought the freedom of religion claims to both the attention of the disciplinary

officer and the MSP warden during the disciplinary hearing and appeal processes. The plaintiff also grieved the 6 month infraction free stipulation in the past.

70. The plaintiff has brought these and similar claims to prison officials in the past, all the way till the present, and has grieved or appealed disciplinary ~~action~~ decisions in an attempt to inform the entire MSP officials to no avail. His grievances and appeals have fallen on ~~deaf~~ deaf ears for years now and his attempts to document these types of issues in a systematic fashion encompasses hundreds if not thousands of pages of documentation. His activism has been relentless.

## IX PREVIOUS LAWSUITS

71. The plaintiff has never to his knowledge had a lawsuit dismissed

based on the "three strikes rule" of 28 U.S.C. §1915(g).

22. The plaintiff has never filed any other suits with the same Facts involved in this case.

23. The plaintiff has filed one suit (Cause No. 6:20-CV-00080-SEH) that involved simular issues but this is based on different circumstances. That case was filed against Rediginald N. Michael. That case is on appeal to the 9th Cir. It was dismissed with prejudice after the plaintiff failed to Amend within a certain time frame which the plaintiff disputes.

24. The plaintiff has filed one other lawsuit besides the one mentioned in paragraph 23. Cause No. 6:22-CV-00012-SEH. That lawsuit is against Robert Ordno. All of these cases mentioned are in the US Dist. Court, Div. of Helena

## X Certification & Closing

75. Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existent law; (3) the ~~factual~~ factual contentions have evidentiary support, or if specifically so identified, will likely have evidentiary support, ~~or if specifically~~ after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Page 21 of 23

Signiture 3 Address

76. Signed this 5th day of January, 2023.

Signed _____

Makneeyappee D. Whitford
#3015941
Montana State Prison
700 Conley Lake Rd.
Deer Lodge, MT 59722

VERIFICATION

State of Montana )
                 ) Affidavit of Makneeyappee
County of Powell )      D. Whitford

77. Mr. Whitford, Makneeyappee D.
being first duly sworn, deposes and
says:
  78. That I am the affiant
in this civil rights complaint

Page 22 of 23

for civil rights violations above
and do hereby declare and
swear that the facts stated
in that document are true
and correct to my knowledge
and belief, and facts stated
on information and belief are
true and correct to my knowledge
and belief.

    Done this ___ day of January,
2023.

              Signed

              Makmugapee D. Whitford
              #3015541
[Notary Public]  Montana State Prison
              700 Conley Lake Rd
              Deer Lodge, MT 59722

Note: 25 Pages of Documentation
attached in order to supplement
the record

Page 23 of 23