MONTANA DEPARTMENT OF JUSTICE
Aislinn W. Brown
Bureau Chief
Agency Legal Services Bureau
1712 Ninth Avenue
P.O. Box 201440
Helena, MT 59620-1440
Telephone: (406) 444-7375
Facsimile: (406) 444-4303
Aislinn.Brown@mt.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| MAKUEEYAPEE D. WHITFORD, | Case No. CV 22-00070-H-SEH |
| Plaintiff, | **DEFENDANTS' PRELIMINARY PRETRIAL STATEMENT** |
| v. | |
| BRIAN GOOTKIN and JIM SALMONSEN, | |
| Defendants. | |

Pursuant to the Court's Scheduling Order (Doc. 28), Defendants Brian

Gootkin and Jim Salmonsen hereby submit their Preliminary Pretrial Statement.

## FACTUAL OUTLINE

On January 9, 2023, Plaintiff Makueeyapee Whitford filed an Amended Complaint, alleging policies enacted, approved, or enforced by Defendants restrict his right to freely exercise his religious practices in violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000-cc-1. (Doc. 21 at 1–3, 5–10.) Defendants filed an answer denying these allegations and claims (Doc. 22.)

## BASIS FOR JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. § 1331 because Whitford's Amended Complaint alleges state employees violated his rights under 42 U.S.C. § 2000cc-1. Venue is proper in the Helena Division because "[p]risoner civil rights cases are venued in the division where an alleged wrong was committed," L.R. 3.2(b)(3), and the events about which Whitford complains allegedly occurred at MSP in Powell County, L.R. 1.2(c)(4).

## FACTUAL BASES FOR DEFENSES

Whitford is an inmate incarcerated at the Montana State Prison (MSP). Since his incarceration commenced in 2015, he has accrued nineteen staff assaults, eight counts of threatening staff, two counts of conspiring to or attempting to assault staff, eleven counts of assaulting other inmates, and two counts of possession of a weapon. Whitford is also classified as a violent offender. His behavior requires that

he be housed in the restricted housing unit (RHU) or special adjustment unit (SAU) at MSP.

MSP has a good behavior requirement that inmates must meet in order to participate in several group activities, including some religious group activities. For example, an inmate must have six months' clear conduct, *i.e.*, an inmate may not have accrued a major or minor infraction within six months, before the inmate may participate in the group activity. Only inmates in a general prison population may participate in group activities, including some religious group activities, regardless of the duration of their clear conduct. Inmates housed in the RHU or SAU are considered significant security risks and are not allowed in the general inmate population. MSP does not restrict RHU or SAU inmates from exercising their religious practices in their cells.

MSP inmates are divided into three groups: low side, high side, and restricted housing. Low side inmates live on the low security side of the prison based on their good behavior while incarcerated. High side inmates live on the high security side of the prison based on the violent nature of their crimes or their poor behavior while incarcerated. There is a general population of low side inmates and a general population of high side inmates. Restricted housing and special adjustment inmates are housed on the high security side of the prison, but are separated from all other inmates, including the high side general population. These

inmates are in restricted housing or special adjustment based on the particularly violent nature of their crimes or their particularly poor behavior while incarcerated.

MSP offers programming compatible with many Native American religions, including the Blackfeet religion. These activities include a drum circle, a sweat ceremony, a pipe ceremony, and a talking circle. The activities are offered on both the high side and the low side of MSP. Any general population inmate can participate in the respective sweat ceremony, pipe ceremony, and talking circle. Participation in the drum circle is subject to the clear conduct requirement. The clear conduct requirement also applies to inmates who wish to stand for election as pipe carrier and sweat lodge roadman.

Whitford claims to practice the Blackfeet religion. He claims his religious principles imbue him with the right to carry a sacred pipe and act as community pipe carrier during ceremonies; the right to play the ceremonial big drum with other drummers; the right to participate in the setup of the sweat lodge for sweat ceremonies; and the right to attend the powwow or spirit gathering. He claims that MSP's clear conduct requirement substantially burdens his First Amendment right to freely exercise his religion because it is not the least restrictive means narrowly tailored to further a compelling government interest.

However, the reason Whitford is unable to participate in these ceremonies is not the clear conduct requirement but, rather, the fact that he is not in the general

population. Whitford's violent behavior has led to his placement in the RHU or SAU, where he is not eligible to participate in any group activities, irrespective of what those activities are. Whitford is permitted to participate in religious activities in his cell but, for security reasons, cannot participate in any activities with other inmate. There are compelling penological interests in preventing dangerous inmates from communing for any reason.

## LEGAL THEORIES UNDERLYING DEFENSES

1. RLUIPA Violation

"While RLUIPA adopts a compelling governmental interest standard, context matters in the application of that standard." *Cutter v. Wilkinson*, 544 U.S. 709, 722–23 (2005) (internal quotation marks and citation omitted). Courts are expected to apply RLUIPA's standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Id*. at 723. Section 3 of RLUIPA provides that "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution … even if the burden results from a rule of general applicability," unless the Government establishes that the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)–(2). RLUIPA defines "religious

exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

Under RLUIPA, Whitford bears the initial burden to demonstrate a *prima facie* claim that MSP's policy barring election to certain religious positions constitutes a substantial burden on the exercise of his religious beliefs. *See* 42 U.S.C. § 200-cc-2(b). If Whitford establishes the *prima facie* existence of such a substantial burden, Defendants bear the burden of persuasion to prove that any substantial burden on Whitford's exercise of his religious beliefs is both "in furtherance of a compelling governmental interest" and the "least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a); § 2000cc-2(b).

For a "regulation to impose a substantial burden, it must be oppressive to a significantly great extent. That is, a substantial burden on religious exercise must impose a significantly great restriction or onus upon such exercise." *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004) (internal quotation marks omitted). "[T]he plaintiff shall bear the burden of persuasion on whether the [policy] … or practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion." 42 U.S.C. § 2000cc-2(b).

Here, Whitford cannot show that the clear conduct requirement imposes a substantial burden on his ability to stand for election as pipe carrier or roadman.

The clear conduct requirement is not what prevents him from standing for election: the fact that he is a violent security risk is what prevents him from standing for election, and indeed from participating in any group activity. Contrarily, Defendants can demonstrate that excluding Whitford from group activities is the least restrictive, most narrowly tailored way of fulfilling the compelling government interest in maintaining a secure detention facility. Finally, Whitford has never made clear what "powwow" or "spiritual gathering" the clear conduct requirement bans him from. Defendants are aware that a "talking circle" is among the activities of Whitford's religious cohort; however, the clear conduct requirement does not require talking circle participants to have six months' clear conduct to participate. Again, Whitford is prohibited from participating in the talking circle because he is a violent security risk.

## 2. Supervisory Liability

To the extent Whitford has made a supervisory liability claim against Defendants, they cannot be liable because no underlying constitutional violation was committed. *See Bearchild v. Cobban*, No. CV 14-12-H-DLC-JTJ, 2017 U.S. Dist. LEXIS 59903, at *6–7 (D.Mont. Jan. 18, 2017) ("A supervisory officer's liability, however, can only be predicated upon a violation of the plaintiff's federal right. It follows that absent an underlying violation of an individual's constitutional rights committed by subordinate officers, supervisory personnel can have no

liability for their personal involvement in the subordinate officers' conduct.")
(*Citing City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

### 3. Eleventh Amendment Immunity

Whitford has sued the defendants in their official capacities. The Eleventh
Amendment to the U.S. Constitution bars damages actions against state officials in
their official capacities. *See, e.g.*, *Flint v. Dennison*, 488 F.3d 816, 824–25 (9th Cir.
2007). It also bars injunctive relief intended to compensate a victim for a past
violation of federal law. *Papasan v. Allain*, 478 U.S. 265, 278 (1986).

### 4. Qualified Immunity

Qualified immunity protects public officials from liability for civil damages.
*Jones v. Las Vegas Metro. Police Dep't.*, 873 F.3d 1123, 1130 (9th Cir. 2017).
Whether qualified immunity protects an official depends on two considerations:
"(1) whether 'the facts alleged show the official's conduct violated a constitutional
right; and (2) if so, whether the right was clearly established' as of the date of the
involved events 'in light of the specific context of the case.'" *Tarabochia v.
Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014) (quoting *Robinson v. York*, 566 F.3d
817, 821 (9th Cir. 2009)).  The plaintiff bears the burden of proof to show the right
allegedly violated was clearly established.  *Id*. at 1125 (internal citations omitted).
Whitford will be unable to meet this burden. There is no clearly established law

preventing a prison from segregating dangerous inmates and prohibiting them from participating in general population activities.

5. Immunity from Punitive Damages

The State of Montana is immune from punitive damages pursuant to Mont. Code Ann. § 2-9-105.

## COMPUTATION OF DAMAGES

Defendants do not claim any damages and contend Whitford is not entitled to any damages. If they prevail, Defendants may be entitled to their lawful costs of suit expended.

## RELATED STATE OR FEDERAL LITIGATION

Defendants are unaware of any related state or federal litigation.

## PROPOSED STIPULATIONS OF FACT

1. At all relevant times, Whitford was incarcerated at MSP.

2. At all relevant times, Whitford has been housed in the RHU or SAU.

## PROPOSED DEADLINES RELATING TO JOINDER OF PARTIES OR AMENDMENT OF THE PLEADINGS

The Court has set the joinder and amendment deadlines for April 28, 2023.

(Doc. 28, p. 1.) Defendants have no objection to this deadline.

## IDENTIFICATION OF CONTROLLING ISSUES OF LAW SUITABLE FOR PRETRIAL DISPOSITION

All such issues are discussed herein on pages 5–8.

## NAMES AND LOCATION OF POTENTIAL WITNESSES

| NAME | LOCATION |
|---|---|
| Makueeyapee Whitford, Plaintiff | Deer Lodge, Montana |
| Brian Gootkin, Defendant | Helena, Montana |
| Jim Salmonsen, Defendant | Deer Lodge, Montana |
| Terrie Stefalo, Religious Activities Coordinator | Deer Lodge, Montana |
| Billie Reich, Associate Warden of Programs | Deer Lodge, Montana |
| Scott McNeil, Associate Warden of Security | Deer Lodge, Montana |

## THE SUBSTANCE OF ANY INSURANCE AGREEMENT THAT MAY COVER ANY RESULTING JUDGMENT

Defendants are covered pursuant to the terms and coverage limitations of the Montana Tort Claims Act for the acts and omissions of state employees within the course and scope of their employment.

## THE STATUS OF ANY SETTLEMENT DISCUSSIONS AND PROSPECTS FOR COMPROMISE OF THE CASE

There have been no settlement discussions to date. The prospect for compromise is low at this early stage.

## SUITABILITY OF SPECIAL PROCEDURES

Defendants are unaware of the need for, or suitability of, any special procedures.

DATED this 31st day of March 2023.

MONTANA DEPARTMENT OF JUSTICE
AGENCY LEGAL SERVICES BUREAU

*Counsel for Defendants*


By:  */s/ Aislinn W. Brown*
        AISLINN W. BROWN
        Bureau Chief

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing document with the clerk of the court for the United States District Court for the District of Montana, using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I hereby certify that on March 31, 2023, I caused a copy of the foregoing *Defendants' Preliminary Pretrial Statement* to be served on the following persons by the following means:

| | |
|---|---|
| 1 | CM/ECF |
| \_\_\_\_\_ | Hand Delivery |
| 2 | Mail |
| \_\_\_\_\_ | Overnight Delivery Service |
| \_\_\_\_\_ | Fax |
| \_\_\_\_\_ | E-Mail |

1.   Clerk, U.S. District Court

2.   Makueeyapee D. Whitford, #3015941
     Montana State Prison
     700 Conley Lake Road
     Deer Lodge, MT 59722

By: */s/ Aislinn W. Brown*
      AISLINN W. BROWN
      Bureau Chief
      Agency Legal Services Bureau
      Attorney for Defendants