MONTANA DEPARTMENT OF JUSTICE
Jeremy S. Craft, Agency Legal Counsel
Agency Legal Services Bureau
1712 Ninth Avenue
P.O. Box 201440
Helena, MT 59620-1440
Phone: (406) 444-7375
Fas: (406) 444-4303
Jeremy.Craft@mt.gov

*Attorney for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| MAKUEEYAPEE D. WHITFORD, | CV 22-70-H-SEH |
| Plaintiff, | AFFIDAVIT OF BILLIE REICH |
| v. | |
| BRIAN GOOTKIN and JIM SALMONSEN, | |
| Defendants. | |

STATE OF MONTANA     )
                                        :ss
COUNTY OF _____ )

I, Billie Reich, first being duly sworn, aver the following:

1.     I am a citizen of the United States, over 18 years of age,

competent to testify, and have personal knowledge of the following

facts. I am not a party to this lawsuit.

2.     I am employed by the Montana Department of Corrections as DOC Grievance Manager. I have held this position since February 14, 2023.

3.     Prior to that, I was the Associate Warden of Technical Services at MSP.

4.     As Associate Warden of Technical Services, I managed the day-to-day operations of the grievance, disciplinary, classification and movement programs, restricted housing compliance and the mailroom.

5.     I have reviewed Exhibit C, filed herewith. Exhibit C is a true and accurate copy of MSP's record of Whitford's prison sentences. Whitford was sentenced to prison for 60 years following his conviction for deliberate homicide.

6.     On March 10, 2020, Whitford was convicted and sentenced for assaulting MSP staff with bodily fluids.[1]

7.     I have reviewed Exhibit D, filed herewith. Exhibit D is a compilation of true and accurate copies of Whitford's disciplinary records composed of disciplinary infractions, disciplinary hearing

---

[1] Exh. C.

**AFFIDAVIT OF REICH | 2**

decisions, appeals of those decisions, classification summaries, and housing plan reviews.

8.    My review indicates that between 2018 and 2022, Whitford had amassed disciplinary infractions for more than sixteen staff assaults (including the 2 assaults with bodily fluids), more than fifteen instances of threatening staff, two instances of conspiring or attempting to assault staff, and two instances of possession of a weapon.[2]

9.    I have reviewed Exhibit E, filed herewith. Exhibit E is a true and accurate copy of Whitford's Internal and External Movement record as of September 19, 2023.

10.   According to Exhibit E, since Whitford's return to MSP from Crossroads Correctional Center on November 17, 2016, Whitford had only spent 197 days outside of locked housing, out of 2,323 days total at MSP. One hundred and ninety-four of those were in the high security (high side) general population; three were in the infirmary.

11.   Prior to Whitford's incarceration at MSP, he was incarcerated at what was then the Crossroads Correctional Center

---

[2] *See* Exhibit D, generally. Other less serious infractions are included in Exhibit D.

**AFFIDAVIT OF REICH | 3**

("CCC") in Shelby, Montana. Whitford was moved from the CCC to MSP because he stabbed another inmate at CCC.

12.   As of March 29, 2023, Whitford had spent 2,126 days in locked housing. At MSP, inmates who present an unusually high security risk are housed in restricted housing at administrative segregation custody. In restricted housing, inmates are each housed in separate cells and do not intermingle for activities unless they are secured with restraints or placed in a separate caged yard.

13.   Until August 16, 2023, Whitford was housed in the Secure Adjustment Unit ("SAU"), which is one of MSP's restricted housing units. Whitford was housed in the SAU because of his placement in the restricted housing program due to his continued assaultive and threatening behavior.

14.   The SAU is intended to be temporary housing designed to allow inmates the opportunity to improve their behavior and intermingle in group setting with other inmates so that they can successfully transition to the general prison population.

15.   MSP is divided into five different compounds: the high security side (the "high side"), the low security side (the "low side"), the

Work and Reentry Center (the "WRC"), the Martz Diagnostic Intake

unit ("MDIU"), Maximum Security ("RHU").

16.     On August 16, 2023, Whitford was transferred to the general

population on the high security side of MSP ("high-side gen. pop.").

17.     Inmates are classified to be housed in one compound or the

other based on their behavior while incarcerated, treatment and

programming compliance and the severity and recency of their crimes.

Filed herewith as Exhibit H is Whitford's most recent classification

summary. Assaultive/predatory behavior increases the inmate's score.

Whitford scores administrative segregation custody, i.e., restricted

housing, but that classification has been overridden to close custody on

high-side gen. pop. because of his recent satisfactory conduct and

completion of the restricted housing program. His override to high-side

gen. pop. is an opportunity for him to display good conduct and includes

zero tolerance for assaultive or threatening behavior. Whitford still has

a single-cell restriction, meaning MSP staff consider him still too

dangerous to have a cell mate. Since August 16, 2023, Whitford has

accrued five disciplinary infractions in high-side gen. pop.,[3] which indicates that he remains unable to control his behavior.

18.   Inmates housed on the high side are not permitted on the low side for any reason. This is due to the more intense security measures required to safely house high security inmates which are not present on the low side. The security situation is more relaxed on the low side compared to the high side. Inmates housed on the low side enjoy more privileges and opportunities than inmates housed on the high side.

19.   I have reviewed Exhibit B, filed herewith. Exhibit B is a true and correct copy of MSP Procedure 5.5.101, which covers how special activities are put on.

20.   A powwow is an "other" type of special activity pursuant to § III.A.2.c.1 of Procedure 5.5.101, and is thus subject to the special activities procedure.

21.   Pursuant to Procedure 5.5.101, an inmate must have at least six months' clear conduct prior to the date of the special activity in order to attend.[4] The Procedure 5.5.101 clear conduct restriction is in

_____

[3] *See* Exhibit D at pp. 1–8.
[4] Exh. B at § III.D.2.

**AFFIDAVIT OF REICH | 6**

place to prevent inmates who have recently exhibited dubious behavior from attending an event. The restriction was put into place after inmates were assaulted, contraband was trafficked, sexual assaults occurred, and gang members planned and conducted fights and assaults. This behavior disrupted communal activities by insincere inmates. The heightened restrictions were put in place to prevent a recurrence of these instances.

22.    Because no high side inmates may attend any activity on the low side, Whitford will not be allowed to attend the powwow, regardless of whether he has six months' clear conduct at the time of the powwow.

23.    In order for a single high side inmate to attend the low side powwow, many extra staff would be required in addition to the extra staff required simply to put on the powwow. The inmate would need an escort of at minimum three correctional officers depending on the total number of inmates attending.

24.    Taking at minimum three officers from their regular high side postings would undermine the security of the institution. There are not enough correctional officers to schedule any of them for extra hours;

indeed, many of them work significant overtime in the absence of unusual staffing needs such as during a special event.

25. Some inmates have the need to be separated from one another because of past assaults or threats, including sexual assaults; or gang affiliations. In many instances, these separation needs are satisfied by moving the threatening or predatory inmate to the high side while leaving the potential or actual victim on the low side. These separation needs would need to be considered in order for a high side inmate to attend a low side event.

26. Special events could become an opportunity for contraband trafficking. The clear conduct restriction prevents inmates having a recent history of trafficking contraband from gaining access to a wide open market.

27. In the interest of maintaining institutional security, MSP administrators would probably suspend the powwow entirely because adequately staffing the special event, regular prison operations, and escorts for a high side inmate would be impossible.

28. MSP inmates are prohibited from smoking and use of tobacco or tobacco substitutes pursuant to MSP Procedure 3.4.3, except

AFFIDAVIT OF REICH | 8

as permitted for legitimate inmate spiritual practices such as those set forth in the Native American Religious Programming Guidelines. This prohibition is in accordance with the Montana Clean Indoor Air Act to provide a tobacco-free work and living environment for employees, visitors, and inmates. A true and accurate copy of MSP Procedure 3.4.3 is filed herewith as Exhibit G.

29.     Smoking accessories such as pipes are contraband at MSP.

30.     An inmate allowed to possess a pipe could use the pipe to ingest tobacco or other contraband or allow other inmates to ingest tobacco or other contraband. An inmate could alter a pipe into a weapon or other contraband.

Further affiant sayeth naught.

DATED this 21st day of September 2023.

_Billie Reich_
[NAME]

SUBSCRIBED AND SWORN before me this ___ day of September 2023 by Billie Reich.

**AFFIDAVIT OF REICH | 9**

S. MENICUCCI-SCHIMMING
NOTARY PUBLIC for the
State of Montana
Residing at Deer Lodge, Montana
My Commission Expires
March 15, 2025

SEAL

_____
Signature of Notary Public