MONTANA DEPARTMENT OF JUSTICE
Jeremy S. Craft, Agency Legal Counsel
Agency Legal Services Bureau
1712 Ninth Avenue
PO Box 201440
Helena, MT 59620-1440
Phone: (406) 444-7375
Fax: (406) 444-4303
Jeremy.Craft@mt.gov

*Attorney for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| MAKUEEYAPEE D. WHITFORD, | CV 22-70-H-BMM-JTJ |
|---|---|
| Plaintiff, | |
| vs. | DEFENDANTS' STATEMENT OF DISPUTED FACTS |
| BRIAN GOOTKIN and JIM SALMONSEN, | |
| Defendants. | |

1. DOC Policy and MSP Procedure 5.6.1 is the current policy and procedure regarding Religious Programming at the Montana State Prison. (Exhibit 1: Religious Programing Policy and Procedure, Religious Activities Center Guidelines, and Special Activities procedure [MSP 5.5.101])

*Disputed. The version of MSP Procedure 5.6.1 filed as pp. 10–37 of Doc. 53-1 is not the current procedure regarding religious programming*

at Montana State Prison ("MSP") and was not the current procedure at the time Whitford filed his complaint. The current version of MSP 5.6.1, which was the current procedure at the time Whitford filed his complaint, is attached hereto as Exhibit A.

2. MSP Procedure 5.5.101 governs "Special Activities" at the Montana State Prison.

*Disputed. The version of MSP Procedure 5.5.101 attached as pp. 38–55 of Doc. 53-1 is not the current procedure regarding religious programming at Montana State Prison ("MSP") and was not the current procedure at the time Whitford filed his complaint. The current version of MSP 5.5.101, which was the current procedure at the time Whitford filed his complaint, is filed as Doc. 56-5.*

3. A "spiritual gathering" which is also known as a "powwow" is considered a "Special Activity" in regards to MSP Procedure 5.5.101.

*Undisputed.*

4. Sweat Set Up Crew is considered an auxiliary group in support of the Sweat Ceremony according to Attachment C of DOC/MSP 5.6.1, RAC Rules.

*Undisputed.*

5. Drum Group is considered an auxiliary group in support of the Sweat ceremony according to Attachment C of DOC/MSP 5.6.1, RAC Rules.

*Undisputed.*

6. Sacred Pipe Ceremony is facilitated by designated pipe carriers who are elected by Native American inmates according to Attachment F of DOC/MSP 5.6.1.

*Undisputed to the extent that the term "facilitated by" means "responsible for handling and controlling the sacred pipe for their respective area during pipe ceremonies." See Doc. 53-1, p. 32 at ¶ 6.a, p. 35 at ¶ 8.*

7. Each of the Religious activities mentioned in number 1–6, above and within these undisputed facts, are governed by a good behavior policy according to the defendants. (Doc. #31, pages 2–3).

*Disputed in that 1) there is no single "good behavior policy" governing all four activities (Doc. 53-1, pp. 31 at ¶ 2 and 32 at ¶ 6.a; Doc. 56-4 at p. 10, ¶ 2; Doc. 53-1 at p. 41, § III.D.2) and 2) drum group practice is not considered part of any Native American ceremony or religious activity (Doc. 56-4, p. 10, ¶ 1). Undisputed to the extent that an*

*inmate is required to have six months' clear conduct to stand for election as pipe carrier, to participate in sweat setup, to participate in drum group practice, and, in general, to attend a special activity. Defendants object to the citation to Doc. 31 because Doc. 31 is not testimonial in nature and thus cannot be considered as part of the factual record before this Court.*

8. This "good behavior policy," which the plaintiff refers to as a "6 month infraction free stipulation" on his Religious Freedom, requires that inmates within the custody of the Montana Department of Corrections and the Montana State Prison be 6 months infraction free before they can participate in the 4 religious activities mentioned in number 1–6 above and within these undisputed facts (i.e., 1. Special Activity [spiritual gathering /powwow], 2. Sweat Set-Up Crew, 3. Drum Group, and 4. Pipe Carrier Election). See DOC/MSP 5.6.1 (generally) and DOC/MSP 5.5.101, documented in Exhibit 1.

*Disputed insofar as 1) MSP Procedure 5.5.101 attached as pp. 38–55 of Doc. 53-1 is not the current procedure regarding religious programming and was not the current procedure at the time Whitford filed his complaint (see Doc. 56-5, which is a copy of the current*

*procedure at the time Whitford filed his complaint); 2) inmates housed on the high security side of MSP are not allowed to attend special activities on the low security side of MSP regardless of whether they have achieved six months' clear conduct (see Doc. 56-3, ¶ 18); and 3) there is no single "good behavior policy" governing all four activities. Doc. 53-1, pp. 31 at ¶ 2 and 32 at¶ 6.a; Doc. 56-4 at p. 10, ¶ 2; Doc. 53-1 at p. 41, § III.D.2.*

9. The plaintiff is a member of the Blackfeet Indian Nation and has a sincere belief in the Native American way of life according to his spirituality and religion; and is also an academic scholar in the area of Blackfeet Studies, Blackfeet Language, and Native American Studies in general. See Exhibit 2.

*Disputed as to whether Whitford is an "academic scholar." In Exhibit 2 (Doc. 53-1, pp. 57–67), ¶ 20, Whitford states that "[i]n my opinion, I am an expert in Native American studies." However, Whitford has not presented a curriculum vitae or any other evidence to validate his opinion that he is an expert. Undisputed that Whitford is a member of the Blackfeet Nation and has sincere belief in the religion of that people.*

10. On December 8, 2021, the plaintiff was infracted for possession of a weapon. Exhibit 3.

*Undisputed. Defendants object to this statement because it is irrelevant and therefore inadmissible as evidence. Whitford's due process claim was screened out by this Court on September 1, 2022.*

11. The plaintiff brought up several due process issues regarding his disciplinary hearing. Exhibit 4.

*Undisputed. Defendants object to this statement because it is irrelevant and therefore inadmissible as evidence. Whitford's due process claim was screened out by this Court on September 1, 2022.*

12. The plaintiff was unable to have his disciplinary hearing reviewed judicially by the courts because of a lack of a "Liberty Interest." Exhibit 5 and Doc. #8, pages 1–2. (this court denied the plaintiff's due process claims in regards to his disciplinary hearing during the Screening Process).

*Undisputed. Defendants object to this statement because it is irrelevant and therefore inadmissible as evidence. Whitford's due process claim was screened out by this Court on September 1, 2022.*

13. Because of the lack of judicial review, disciplinary hearings, appeals, and infractions are regularly upheld. Exhibit 5.

*Disputed. This is an expression of Whtiford's opinion and not a fact; see Exhibit 5, ¶¶ 9, 10. (Doc. 53-1 at pp. 77–79). Defendants object to this statement because it is irrelevant and therefore inadmissible as evidence. Whitford's due process claim was screened out by this Court on September 1, 2022.*

14. The plaintiff appealed his disciplinary hearing which was upheld by the Warden through D.J. Godfrey. Exhibit 6.

*Undisputed. Defendants object to this statement because it is irrelevant and therefore inadmissible as evidence. Whitford's due process claim was screened out by this Court on September 1, 2022.*

15. Additionally, the plaintiff previously challenged the policy, procedure, and practice regarding the good behavior policy and 6 month infraction free stipulation on this religious freedom. Exhibit 9.

*Undisputed.*

16. The plaintiff has received over 188 major infractions since being incarcerated in the Montana Department of Corrections and the Montana State Prison system. Exhibit 7.

*Undisputed.*

17. The plaintiff has been a civil rights advocate regarding Prisoners' Rights and has filed over 500+ grievances, while also utilizing civil disobedience in order to affect change at the Montana State Prison in the Maximum Security Units. Exhibit 8.

*Disputed. This statement is Whitford's attempt to mischaracterize his violent and assaultive behavior. See, e.g., Doc. 56-3 at ¶¶ 6, 8, 11; Doc. 56-7 at pp. 17, 19–21, 27–32, 34, 35, 38–40, 42, 44, 46–49, 53–80, 83–92, 102, 103, 105–110, 115–122, 137–144, 149–153, 156–165, 168–171, 175, 177–185, 192–201, 206–228, 232–236, 240, 241, 245–250, 293–298, 301–304, 314–326, 331, 332, 335, 353–363, 369–371, 387, 388, 395, 420, 422, 425–430, 461–471, 473–476, 486, 487, 492, 494, 495, 501–504, 514, 520, and 524–527. Whitford has no right to engage in civil disobedience because civil disobedience is, by definition, breaking the law or violating prison rules. See, e.g., U.S. v. Schoon, 939 F.2d 826, 828 (9th Cir. 1991) ("Indirect civil disobedience involves violating a law which is not, itself, the object of protest, whereas direct civil disobedience involves protesting the existence of a particular law by breading that*

*law.") (in concluding that a defense of necessity is inapplicable to criminal charges arising from acts of indirect civil disobedience).*

18. Many of the plaintiff's major infractions have been because of this civil disobedience and Prisoner's Rights activities. Exhibit 8.

*Disputed. This statement is Whitford's attempt to mischaracterize his violent and assaultive behavior. See, e.g., Doc. 56-3 at ¶¶ 6, 8, 11; Doc. 56-7 at pp. 17, 19–21, 27–32, 34, 35, 38–40, 42, 44, 46–49, 53–80, 83–92, 102, 103, 105–110, 115–122, 137–144, 149–153, 156–165, 168–171, 175, 177–185, 192–201, 206–228, 232–236, 240, 241, 245–250, 293–298, 301–304, 314–326, 331, 332, 335, 353–363, 369–371, 387, 388, 395, 420, 422, 425–430, 461–471, 473–476, 486, 487, 492, 494, 495, 501–504, 514, 520, 524–527. Whitford has no right to engage in civil disobedience because civil disobedience is, by definition, breaking the law or violating prison rules. See, e.g.,* U.S. v. Schoon, *939 F.2d 826, 828 (9th Cir. 1991) ("Indirect civil disobedience involves violating a law which is not, itself, the object of protest, whereas direct civil disobedience involves protesting the existence of a particular law by breading that law.") (in concluding that a defense of necessity is inapplicable to criminal charges arising from acts of indirect civil disobedience).*

19. The "Inmate Disciplinary Sanction Grid," attachment E of the DOC/MSP Policy and Procedure 3.4.1, state's "Generally an activity may only be restricted when the violation involves that activity or the rules regulating it." Exhibit 10.

*Undisputed.*

20. DOC/MSP Policy and Procedure already provide sufficient rules and guidelines regarding safety, security, and the orderliness of the facility when it comes to visiting activities. Exhibit 11.

*Disputed. Whitford's opinion that DOC Policy and MSP Procedure 3.3.8 provide sufficient rules regarding safety is not a fact. Defendants object to consideration of DOC Policy and MSP Procedure 3.3.8 because they are irrelevant in that they address visits to MSP inmates in general and do not apply to special activities. Because they are not relevant, they are not admissible as evidence.*

21. All of the Religious Activities that the plaintiff has mentioned within this Statement of Undisputed Facts, are already regulated by normal policy and procedure which provides for the safety, security, and orderliness of the Institution. See numbers 1–20 of this document.

*Disputed. Whitford's opinion that the six months' clear conduct policies are unnecessarily redundant is not a fact. Defendants object to the meaningless citation to "numbers 1–20 of this document." Whitford has failed to pinpoint cite to a specific pleading, deposition, answer to interrogatory, admission, or affidavit before the court to support such a fact. See L.R. 56.1(a)(2).*

22. Additionally, all of the Religious Activities that the plaintiff has mentioned in this Statement of Undisputed Facts, are held in the same place, involve the same type of religious activities that are being restricted, and involve the same people. The only major differences in the restricted activities are the time frames which provide different times for the restricted activities. Exhibit's 1, 10, and 11.

*Defendants object to this statement because it is unclear. Defendants object to the meaningless citation to "Exhibit's 1, 10, and 11." Whitford has failed to pinpoint cite to a specific pleading, deposition, answer to interrogatory, admission, or affidavit before the court to support such a fact. See L.R. 56.1(a)(2).*

23. Inmates who have had a major infraction are allowed to participate in all of the unrestricted activities mentioned in this

Statement of Undisputed Facts, which are only different in regards to the time frame in which restricted activities are held. See number 22, above.

*Disputed in that a major infraction destroys clear conduct, and an inmate who does not have clear conduct within six months of a specific date may not stand for election as pipe carrier, be part of the sweat setup crew, participate in drum group, or attend a special event held on his side of MSP on that date. See Doc. 56, ¶¶ 21, 31, 49; Doc. 56-1, ¶¶ 12, 18; and Doc. 56-4 at p. 4, ¶ 6.a.*

*Undisputed in that inmates who have accrued a major infraction are nonetheless allowed to participate in the pipe ceremony, the sweat ceremony, and to drum during the sweat ceremony.*

*Defendants object to the meaningless citation to "number 22, above." Whitford has failed to pinpoint cite to a specific pleading, deposition, answer to interrogatory, admission, or affidavit before the court to support such a fact. See L.R. 56.1(a)(2).*

## DEFENDANTS' L.R. 56.1(b)(2) ADDITIONAL FACTS

24. MSP Procedure 5.6.1 – Religious Programming includes the Native American Religious Programming Guidelines as Attachment F

(the "Guidelines"), which sets forth the selection of the pipe carrier, the selection of the sweat lodge setup crew, and drum group practice. (Doc. 56-1, ¶¶ 5, 6; Doc. 56-4.)

25. The Guidelines require an inmate to have six months' clear conduct before he can be selected to help with setting up the sweat lodge, standing for election as pipe carrier, or attending drum group practice. (Doc. 56-1, ¶ 6; Doc. 56-4, p. 3, ¶ 2; p. 4, ¶ 6.a; p. 10, ¶ 2.)

26. A "powwow" is an "other" type of special activity governed by MSP Procedure 5.5.101 – Special Activities. (Doc. 56-3, ¶¶ 19, 20.)

27. Pursuant to Procedure 5.5.101, an inmate must have at least six months' clear conduct prior to the date of the special activity in order to attend. (Doc. 56-3, ¶ 21.)

28. Whitford is currently housed in the general population on the high security side of MSP. (Doc. 56-3, ¶ 16.)

29. Inmates housed on the high security side of MSP are not allowed on the low security side of MSP for any reason. (Doc. 56-3, ¶ 18.)

30. There is a powwow scheduled to take place on the low security side of MSP during December 2023. (Doc. 56-1, ¶ 21.)

31. Because no high side inmates may attend any activity on the low side, Whitford will not be allowed to attend the powwow, regardless of whether he has six months' clear conduct at the time of the powwow. (Doc. 56-3, ¶ 22.)

DATED this 27th day of October 2023.

AGENCY LEGAL SERVICES BUREAU

*/s/ Jeremy S. Craft*
JEREMY S. CRAFT
Agency Legal Counsel

## CERTIFICATE OF SERVICE

I certify that on October 27, 2023, I electronically filed the foregoing document with the clerk of the court for the United States District Court for the District of Montana, using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that on October 27, 2023, I caused a copy of the foregoing document to be served by first class mail to:

> Makueeyapee D. Whitford, #3015941
> Montana State Prison
> 700 Conley Lake Road
> Deer Lodge, MT 59722

*/s/ Jeremy S. Craft*
JEREMY S. CRAFT
Agency Legal Counsel