UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
Helena Division

| | |
|---|---|
| MAKUEEYAPEE D. WHITFORD<br>Plaintiff,<br>v.<br>BRIAN GOOTKIN and JIM SALMONSEN,<br>Defendant's | CV 22-70-H-BMM-JTJ<br>PLAINTIFF"S REPLY TO THE DEFENDANT"S RESPONSE TO THE PLAINTIFF'S MOTION TO ENJOIN MSP/DOC STAFF & EMPLOYEES FROM FRUSTRATING AND IMPEDING FUTURE ACCESS TO COURTS. |

On the 28th day of September, 2023, Defendant's Brian Gootkin and Jim Salmonsen, responded to the Plaintiff's Motion to Enjoin MSP/DOC Staff and Employee's from Frustrating and Impeding Future Access to the Courts. Doc. #59. This Court should grant the plaintiff's motion to enjoin the staff and employee's of the Montana State prison system from frustrating and impeding the plaintiff's right to access the courts because the plaintiff has left the Judges decision open as to what type of remedy the judge may feel is appropriate if the judge does not agree with a granting of a preliminary injunction or a lesser form of injunction other than what the plaintiff has specifically asked for. The judge has options as to what they can do and the plaintiff merely requests that something be done, if not that the defendant's and the staff and employee's are enjoined from frustrating or impeding or otherwise prevented from continuing what they are doing in regards to his right to access the courts. Further more, the fact that there is already a breach of that right and actual injury which continues to effect the plaintiff as he litigates his cases in the courts, there is no reason why the court shouldn't grant the motion. In that case, the plaintiff is entitled to an injunction.

Also, the fact that the judge has options other than anything

that the plaintiff has requested, means that the appropriate remedy can be fashioned in order to provide the plaintiff with somekind of relief.

## LEGAL STANDARDS

Prisoners have a constitutional right to complain, to petition the government in redress of grievances, which includes the right of reasonable, meaningful access to the corts, Johnson v. Avery, 393 U.S. 483 (1967). The right of access stems from the First Amendment and the Due Process Clause of the Fourteenth Amendment, to embrace court petitions and other actions, and to protect those who pursue institutional grievances. Davis v. Goord, 320 F.3d 346 (2nd Cir. 2003).

Because of the lack of opprotunity that comes along with physical incarceration, prisoners have the right to active assistance from prison officials in the preparation and filing of legal papers. This right imposes on officials the duty to establish either a law library or a program allowing for assistance from persons trained in the law. Prisons are not required, however, to provide both trained legal assistance and a law library, so long as access to either is meaningful; and prisons may experiment with a combination of methods such as employing jailhouse lawyers, supplying performed pleading packets, offering limited legal publications, Oroviding paralegal services, etc. The question of sufficient court access turns on whether the prison provides "meaningful" access. Courts have held that this does not mean prisons must enable prisoners to become full-blown litigating machines, able to file on and research every legal theory, but rather that prison resources must be sufficient to allow prisoners to file papers and subsequently persue their claims.

Some access-to-court rights are more settled. Prison officials must provide for mailing, notary services, and photocopies, as "litigation necessarily requires some means of accurate duplication because the court and parties need to refer to the same documents...[and] photocopying is a reasonable means of providing the necessary copies of petitions, complaints, answers, motions, affidavits, exhibits, memoranda and briefs, including attachments and appendices, material needed for discovery and investigation, including interrogatories and freedom of information requests." Gluth v. Kangas, 951 F.2d 1504, 1510 (9th Cir. 1992).

Prisoners must also demonstrate "actual injury" resulting from a denial of access to the courts in order to establish a cognizable constitutional claim. See Lewis v. Casey, under "Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1492, 52 L.Ed.2d 72 (1977)"("Whatever the assistance supplied prisoners, however, the Constitution is not offended by a lack of legal resources or ineffective assistance programs unless a prisoner can show an actual injury to a contemplated or exsisting non-frivolous litigations." Id., 518 U.S. at 355. Successful access claims have involved insufficient facislities or resources, or interference by prison staff, such as when officials delay delivery of papers that demand immediate legal attention, causing a claim, defense, or privlege to become frustrated or barred by time limits. The exception to the otherwise strict "actual injury" rule arises with the fundamental deprivation of access rights, such as when a prison or jail is devoid of virtually any legal assistance programs or if officials conspire to forestall a prisoner's claim. Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998).

In addition to legal assistance from prison officials, prisoners

can expect certain accomodations from the courts once claims are filed. Judges recognize that prisoners face practical difficulties in exersizing the right of legal access and usually relax procedural hurdles in some circumstances to allow prisoners to file and prosecute claims. Judges know prisoners are not trained in legal theory and procedure, and thus should "liberally construe" pleadings favorably to prisoner plaintiff's when possible.

    See also, Gomez v. Vernon, 255 F.3d 1118 (9th Cir. 2001)(access to courts entails prisoners' right to access legal materials and prisoner law clerks); Toolasprashad v. Bureau of Prisons, 286 F.3d 576 (D.C. Cir. 2002)(meaningful acceess to courts necessairly involves the ability to file legal papers and the use of accessories required to prosecute legal claims); Silva v. Di Vittorio, 685 F.3d 1090, 1103-04 (9th Cir. 2011)(The court held "that prisoners have a right under the First and Fourteenth Amendments to ligigate claims challenging their sentences or the conditions of their confinement to conclusion without active interference by prison officials." The court explained the difference between the "right to assistance" and "interference" analyses for a prisoner's access-to-courts claim. To allege a claim for violation of the right to litigate without active interference, the plaintiff must identify the interference and allege that he has suffered an actual injury, such as the dismissal of his pending action.); Christopher v. Harbury, 536 U.S. 403, 413-14, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002)(The Court detailed two categories of access to the court claims: "In the first are claims that systematic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time. Thus, in the prison litigation cases, the relief sought may be a law library for a prisoner's use in preparing a case, or a reader for an illiterate prisoner, or simply

a lawyer...In cases of this sort, the essence of the access claim is that official action is presently denying an opprotunity to litigate for a class of potential plaintiffs. The opprotunity has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a seperate claim for relief once the frustrating condition has been removed. The second category covers claims not in aid of a class of suits yet to be litigated, but of specific cases that cannot now be tried (or tried with all material evidence", no matter what official action may be in the future. The official acts claimed to have denied access may allegedly have caused the loss or inadequate settlement of a meritorious case, the loss of an opprotunity to sue, or the loss of an opprotunity to seek some particular order of relief[.] These cases do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could have commenced, or could have produced a remedy subsequently unobtainable.").

As to the Preliminary Injunction standards, in order for the plaintiff to obtain a preliminary injunction, he must establish (1) he will suffer irreparable injury unless the injunction issues, (2) the threatened injury outwieghs any damage the proposed injunction might cause the opposing party, (3) that the injunction, if issued, will not be contrary to public interest, and (4) that it has a substantial likelihood of success on the merits. Oklahoma ex. rel. Okalahoma Tax Comm'n. v. International Registration Plan, 455 F.3d 1107, 112-13 (10th Cir. 2006)

In regards to the Prison Litigation Reform Act (PLRA), preliminary injunctions must meet the same standards of tailoring as other prospective relief, though courts need not make the need-narrowness-intrusive-

ness findings at the time relief is granted, and many do not. See e.g., Maney v. Brown, 516 F.Supp.3d 1161, 1184-85 (D. Or. 2021)(granting preliminary injunction requiring vaccination of prisoners for COVID-19; acknowledging PLRA requirements but making no findings); Pompilius v. Nevada, 2021 WL 414534, *1,6 (D.Nev., Feb. 5, 2021)(granting preliminary injunction requiring placement of Qayinite plaintiff on the "common fare" religious diet; acknowledging PLRA requirements but making no findings); Williams v. Arbuckle, 2015 WL 2148104, *4 (S.D. Ill. Apr. 29, 2015)(granting preliminary injunction requiring defendants to provide diet free of beans and eggs, to which the plaintiff is severly allergic; no PLRA findings); Cole v. Johnson, 2015 WL 43047, S.D. Ill., Feb. 2, 2015)(granting TRO requiring defendant's either to deliver plaintiff's mail from transgender rights organization, or show cause to the court why it should be withheld; no PLRA findings.); Randolph v. Nevada, ex rel. Nevada Dep't of Corr., 2014 WL 5364118, *5 (D. Nev., Oct. 21, 2014)(granting preliminary injunction against listening to plaintiff's privleged attorney-client telephone conversations; acknowledging PLRA but making no findings).

tions

ARGUMENT

The plaintiff can and has met all of the factors to preliminary injunction, and this Court must grant this motion for injunction.

1. The plaintiff is likeley to succeed on the merits of his Religious Land Use and Institutionalized Person's Act (RLUIPA) claim. See the plaintiff's Motion for Summary Judgment and Response to the Defendant's Motion for Summary Judgment, Doc.'s #53 and Declaration In Opposition to Defendant's Motion for Summary Judgment.

2. The plaintiff is bringing a request for a Preliminary Injunction

regarding his interference and frustration and retalitory actions of prison officials in his litigation of this case, however, this could also be construed as a seperate claim. The plaintiff is unsure if he would have to request to Amend this complaint to include Access to Court claim or if he would have to file a wholly new complaint. The purpose of this injunction is to prevent prison officials from interfering in this current case and therefore he has filed a motion to enjoin prison officals, staff, and employee's from otherwise frustrating, impeding, or retaliating against him for pursuing his current ligigation. Since this effects his ability to litigate the current case, an injunction preventing them from continuing to do what they are doing is appropriate in order to ensure that the litigation in this case is not hendered any more than it already has been. See Attached Declaration of Makueeyapee D. Whitford In Support of Preliminary Injunction and the Attached grievances regarding prison official's actions.

    3. Irreparable harm is already occurring and has the potential to impact this case and bring the plaintiff's filings to a standstill except for a one time 10 page filing per month. This would be enough to basically request a continuance each month until the plaintiff recieves some type of funds to be able to buy his own materials which is an indefinate consideration since he is not sure when that will be. The Irreparable harm that is occurring is the fact that the plaintiff is being made to illegally obtain legal materials in order to continue to litigate on a normal basis. See Plaintiff's Declaration In Support of Preliminary Injunction. Current policy only allows 10 pieces of "writing" paper which is lined, not typing paper.

    4. The balance of equities does in fact tip in favor of the plaintiff.

First, as to the Defendant's contention that the PLRA need-narrowness-intrusiveness finding must be decided at the time that a preliminary injunction is issued is flawed. As stated above in the PLRA standards, "courts need not make the need-narrowness-intrusiveness findings at the time relief is granted, and many do not." In fact, the first question to the need-narrowness-intrusiveness determination is "when" it is to be made. The answer should be equally obvios from the statutory language, which requires the court to fashion relief that it finds "extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

In light of this language, common sense and the Federal Rules of Civil Procedure prescribe that any decision about the propriety of particular relief be made only after a violation of federal rights has been found. Since the statute requires relief to be supported by findings that it is tailored to the violation, it is hard to see how a rational determination of appropriate relief could be made until there is a finding of violation and a record that might illuminate how best it can be corrected. See Thomas v. Hutcheson, 2015 WL 4378278. *15 (S.D. Ga., July 15, 2012)(denying summary judgment as to plaintiff's injunctive claim; though the requested transfer to a lower security prison is unlikely to be the least intrusive remedy, "it would be imprudent to foreclose the Court from providing any injunctive remedy at all" if a violation is found.), report and recommendation adopted, 2015 WL 5072037 (S.D. Ga., Aug. 26, 2015); Ashker v. Governor of State of California, 2014 WL 2465191, *8 (N.D. Cal., June 2, 2014) (holding 18 U.S.C. § 3626(a)(1)"governs the scope of injunctive relief that a federal court may issue in a 'prison conditions' case after liability has been assessed"(emphasis added)). Additionally, the

Federal Rules of Civil Procedure provide "[e]very [non-default] final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). Since the court is to determine the proper relief at the end of the case, independantly of the parties' demands, (See York v. Beard, 2015 WL 3488217, *3 n.1 (E.D. Cal., June 2nd, 2015)(acknowledging Rule 54(c), noting at initial screening that plaintiff may be entitled to less relief than his complaint demanded under PLRA restrictions), report and recommendations adopted, 2015 WL 4557437 (E.D. Cal., July 27, 2015), reconsideration denied, 2015 WL 5882683 (E.D. Cal., Oct. 5, 2015)), there is no apparent reason why remedial issues should be - or rationally can be - addressed at an earlier stage, especially at the pleading stage by dismissal of complaint, claim, or injunctive demand. As one court put it:

"The 'need-narrowness-intrusiveness' test...is a limitation on judical authority over prisons at the remedial stage, not a heightened-pleading requirement imposed on the plaintiffs....
   The PLRA did not abrogate the longstanding rule that, at the motion-to-dismiss stage, a complaint is judged by whether it presents 'enough facts to state a claim to relief that is plausible on its face,' ... and not whether the relief requested will be granted in full." (Henderson v. Thomas, 891 F.Supp.2d 1296, 1312 (M.D. Ala., 2012)

On summary judgment, whether the need-narrowness-intrusiveness standard can usefully be applied at that point depends on how the court rules substantively. If the court grants summary judgment to the defendant's asto liability, any issue of remedy is moot - though

that fact has not prevented some courts from commenting on remedial issues even after holding defendants entitled to summary judgment. Thomas v. Butkiewicus, 2014 WL 6674951, *3-4 (D. Conn., Nov. 25, 2014)(granting summary judgment dismissing injunctive claim because no injunctive relief was warranted under the usual standards; going on to hold that the relief requested is 'overbroad and unwarranted'; plaintiff sought general reform of prison safety-related procedures and not just action to protect his own safety). The summary judment record supporting liability may require further proceedings, possibly including a hearing, as to the appropriate remedy. See Jackson v. Nevada, 2019 WL 6499106, *11 (D. Nev., Dec. 3, 2019)(granting plaintiff's summary judment for plaintiff under RLUIPA as to his religious diet claims, directing parties to confer about the proper remedy under PLRA), appeal filed, No. 20-15007 (9th Cir. Jan. 3, 2020)) If the court grants summary judment to the plaintiff based on a finding of federal law violation, the case may or may not be ripe for application of the need-narrowness-intrusiveness standard. Burns v. PA Dep't of Corr., 642 F.3d 163, 182 (3rd Cir. 2011)(affirming injunction to expunge disciplinary conviction that summary judgment record showed was unsupported by evidence of crucial fact)

 The instant case concerns a RLUIPA claim and the injunctive relief requested is in relation to an access to courts claim where the plaintiff is contending is interfering in his complaint and case regarding his RLUIPA claim. Therefore, the injunction standard should be applied to the plaintiff's religious claims, not the court of access claim, but the court access claim should be assessed in order to determine whether or not irreparable harm is being done to his RLUIPA claim. The fact that the court access claim is not the foundational claim,

means that the court should be looking to determine whether the court access claim is interfering and frustrating the plaintiff's current RLUIPA litigation. Because this is the case, determining whether or not summary judgment will issue is dispositive, as it could determine whether or not injunctive releif is ripe for review or not.

Furthermore, if the summary judgment review determines that the plaintiff's case tips the balance of equities in his favor, than there is no doubt that prison official's interference and the injunctive relief granted in order to curb that interference is in the public interest because upholding the Constitution of the United States and its laws is always in the interest of the public.

The plaintiff is not bringing a Court Access "claim", he is merely utilizing the claim to show how prison official's conduct is prejudicing his RLUIPA litigation and access to the courts in the current litigation. However, he does plan on filing a seperate suit for violation of his access to the courts persists. In that regard, he is requesting something be done to stop the prison officials from doing what they are doing. And, notifying the court of the possibility of what can happen in the future if it is not stopped as well as the "actual injury" that is currently being suffered by the plaintiff.

As such, the court has the ability to regulate the actions of prison officials that interfer in thier day to day operations as a court and with the people who have litigation within the court.

Additionally, there are other rights that are at stake too. As the plaintiff has stated in his Declaration in Support of Injunctive Relief, the Inmate Welfare Fund (IWF) is the one who pays for the typing ribbons and eraser ribbons, not the state. The IWF fund is a fund that is funded by taxing verious activities and programs by

and for offenders who are incarcerated in the Montana State prison system. Therefore, it is inmate money that is funding the ribbons eraser ribbons, and typewriters. The fact that MSP has allowed the IWF fund to buy these things that are intended for use by the general prison population of which the plaintiff is a part of means that they must also provide it to him on an equal basis. Since this is the case and the facility has decided to allow these things and the Federal Rules of Civil Procedure provide that all documents should be typed when possible, then MSP and DOC staff and employee's should be providing these things to the plaintiff on a regular basis. The fact that they have made an exception to the rule, regarding court access when it comes to type writers and such means that they have in fact created a higher standard of access to the courts via their willingness to accept such programs and services for offenders in thier custody. And, that is why it is a violation of the plaintiff right to access the courts. It is the prison that has created the higher standard and that allows the use of typewriters and now to interfere, frustrate, or retaliate against prisoners such as the plaintiff when they choose to use these programs and services is a violation of his right to access the courts and to treat him equally.

    The defendants through their lawyer, claim that this is too broad of a request for injunction, when it is only an injunction making them comply with their own rules and procedures while not prejiducing the plaintiff during his litigation by interfering in his litigation or attempting to frustrate his attempts to do so and then retaliating against him for doing such things.

    As far as the plaintiff's use of the tablet system, please see the plaintiff's Declaration in support of injunctive relief. There are just so many issues with electronic tablets and the plaintiff's

case load is also significant. In addition to the prison official's interference in his litigation, allowing the plaintiff to utilize the tablet on an everyday basis would not be overly broad or disruptive to the prison staff or facility. They already hand them out each and everyday. Once everyother day to a different floor. The bottom floor of the unit gets them one day, while the upper floor get them the next.

Another thing is that the plaintiff has bought approx. a 1000 dollars in books in order to allow him to litigate effectively. That is how he is able to answer things with the case law that the defendant's mention, but it doesn't allow him to look up more recent case law or to shepardize case law. Which is why the plaintiff names old case law sometimes and alot of times.

## CONCLUSION

The plaintiff has established the necessary factors and has raised serious questions going to the merits of his ability to litigate effectively. The hardships do tip in the balance of his favor. This Court should grant the plaintiff's injunctive relief.

Done this 8th day of ~~October~~ November, 2023.

Signed, _____
MAKUEEYAPEE D. WHITFORD
#3013941
Montana State Prison
700 Conley Lake Road
Deer Lodge, MT 59722