UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
Helena Division

| | |
|---|---|
| MAKUEEYAPEE D. WHITFORD, Plaintiff, v. BRIAN GOOTKIN and JIM SALMONSEN, Defendants. | CV 22-70-H-BMM-JTJ REPLY TO DEFENDANTS' DISPUTED FACTS |

1. Defendant's disputed the "version of MSP Procedure 5.6.1" that the plaintiff cited in his SUF.

THE PLAINTIFF, agrees with the defendant's concerning this undisputed fact. The plaintiff accidently cited the wrong version and adopts the defendant's Exhibit 1 of Doc. 66 @ #1.

Whatever the case, the policy and procedure that the plaintiff originally cited doesn't differ materially in any way as the defendant's version still governs "Religious Programming".

2. Defendant's disputed the "version of MSP Procedure 5.5.101" that the plaintiff cited in his SUF.

THE PLAINTIFF, agrees with the defendant's concerning this undisputed fact. Again, the plaintiff accidently cited the wrong version and adopts the defendant's version, filed as Doc. 56-5.

Whatever the case, the policy and procedure that the plaintiff originally cited doesn't differ materially in any way as the defendant's version

still governs "Special Activities" at the Montana State Prison.

3. Undisputed by plaintiff and defendant.

4. Undisputed by plaintiff and defendant.

5. Undisputed by plaintiff and defendant.

6. Undisputed by plaintiff and defendant.

7. The defendant's dispute that there is one single "good behavior policy" governing all four activities. This portion of the defendants disputed facts are undisputed by the plaintiff.
However, the defendant's dispute that drum practice is considered part of any Native American ceremony or religious activity, which is disputed by the plaintiff. It defies common sense to claim that drum group practice is not a religious activity and it is ludicrous to believe so. First of all, drum group concerns one of the greatest religious activities in American Indian life (i.e., the powwow), which is in fact an undisputed fact in the defendants own words. See Defendants Disputed Facts (Doc. 66 @ #9) The plaintiff introduced an affidavit by SUF which covers the topic of the powwow drum in relationship to his sincere beliefs. These beliefs are religious in nature. That is all that is required. However, each time that the powwow drum is used, prayer is required in opening a drum group session. Additionally, DOC and MSP

Policy and Procedure specifically mention Drum Group (see Defendants Exhibit 1, Doc. 66-1 - Regarding "Native American Religious Programming Guidelines" @ Statis~~~~~ 00293). Technically, the rules in that document specify that "Drum group practice for designated inmates is not considered part of any NA ceremony or religious activity." However, it is undisputable that Drum Group practice is religious in nature. See Plaintiff's SUF @ 9. This is simply a common sense inference that can easily be determined by the court. The powwow drum is the primary tool utilized in a powwow which is considered a ceremony and a religious activity and a special religious activity that is covered by MSP 5.8.101 "Special Activities". Without the ability to practice on a routine basis throughout the year, Native American drummers and singers would not be ready to perform a Spiritual Gathering (aka: Powwow). Therefore, Drum Group practice is essential to that particular ceremony and religious activity. The amount of time that it takes to learn enough songs, to coordinate each others voices and drumming, especially when inmates are coming and going takes alot of time and practice to get prepared in order to hold such a ceremony. This is where drumming practice comes in and why it exsists in facilities accross America's prison nation. Which is also why the plaintiff claims that Drumming Practice is more fit to be an auxilary group to the Spiritual Gathering rather than the sweat ceremony. Anything less, defies the notion of common sense.

8. The Defendant's dispute the policy and procedures version of MSP 5.5.101, which the plaintiff has addressed above in #2. Again, it is immaterial to the fact specified in Plaintiff's SUF because there is no material changes in the versions that the defendant disputes.

The Defendant's again mention the attendance of the loci side powwow which they wrongly assumed the plaintiff was referring to. Therefore, this disputed portion of the record is immaterial.

And as to a "single good behavior policy" governing all four activities that defendants dispute, this is once again immaterial especially since defendant's do not dispute the fact that although there is not one single good behavior policy, each of the four activities mentioned by the plaintiff are in fact governed by seperate good behavior policy's that require six-months infraction free before the plaintiff is eligible to participate in these activities.

9. The defendant's dispute that Mr. Whitford is an "academic scholar" because he has not presented a curriculum vitae or any other evidence to validate his opinion that he is an expert. They undispute that he is a member of the Blackfeet Nation and has sincere belief in the religion of the Blackfeet people.

The plaintiff has stated relavent facts in his affidavit relating to his expertise. He completed over three semesters at the Blackfeet Community

College and this information is contained in the Plaintiff's criminal file as it was used in his sentencing. This file is in the possession of the state of Montana in Lake County 20th Judicial District Court and the prosecuting Attorney's possession as well as in the possession of the Attorney General who prosecuted Mr Whitford in his trial and at sentencing and through appeal. Therefore, the defendants should have no problem with confirming this information.

Above and beyond that, the plaintiff has based this information on his life experience as a Native American activist and his personal studies which have never been documented with an accredited institution, which is why he said "in his opinion" when he stated he is an expert. This "expert" statement was also made based off of the amount of time the Plaintiff has lived in prison throughout the duration of his life. He has only lived 4 years of his life out of prison as an adult and the remaining 20 years of his life has been spent in prison as an American Indian prisoner. His grievance record over the course of his incarceration while in prison and throughout his incarceration in two states, Washington and Montana states, regarding Native American grievances and activism activities is evidence of that fact. The plaintiff has layed the foundation to this information in his affidavit.

Whatever the case, the plaintiff will now be filing a request for an appointment of an attorney because if the defendants want proof and evidence

of the Plaintiff's expertise as an American Indian scholar and expert, it is going to require more time and the ability to access information and sources beyond his means as he is a pro se inmate litigant confined in prison proceeding in forma pauperis because of his status as an indigent person and only with the help of an attorney would he be able to secure such evidence of his expertise in the field of Native American Studies. His life experiences are in fact personal knowledge which is admissable as evidence in a court of law. See Fed. R. Evid. Rule #701. Additionally, this same life experience can be used to qualified the Plaintiff as an expert in several different ways. See Fed. R. Evidence. Rule #702. A witness may be qualified as an expert on the basis of knowledge, skill, training, education, or experience. These bases for qualifications are disjunctive. See e.g., Waldorf v. Shuta, 142 F.3d 601, 626 (3rd Cir. 1998)(error to exclude expert witness on vocational rehabilitation as insufficiently qualified; the witness had no academic training in the field, but he had significant practical experience through his employment with disabled individuals and was familar with the lititure in the field; the court stated that "ordinarily an otherwise qualified witness is not disqualified merely because of a lack of academic training" and that the witness had "substantially more knowledge than an average lay person regarding employment opprotunities for disabled individuals")

The defendant's didn't dispute anything else in the plaintiff's affidavit other than the statement described, which ~~see~~ should render it undisputed.

10. This fact was undisputed, however the defendant's objected to it claiming irrelevance and inadmissable.

The Plaintiff asks that this court overrule this objection because it does not matter whether or not Mr. Whitford's due process claim was screened out or not. The reason why is because it is important to lay a foundation to show that each and every time that the Plaintiff is infracted with a major infraction, his constitutional right to participate in his religious freedom is put into jeapardy with no way for him to have his due process indictially reviewed by a higher authority than those who are in charge with finding him guilty and that there are violations in his due process, particularily at the time that he filed suit, that otherwise would not be upheld in a judicial forum had he been able to challenge his due process because of a legitimate liberty interest. <u>This foundation goes to the "substantial burden" that is placed on the Plaintiff each and everytime that he has his religious freedom taken away.</u> The fact that the Plaintiff can show actual violations of his due process that would otherwise be the basis of an individual due process claim, but for a liberty interest, shows the compounding characteristics of "substantial burden" being placed on the Plaintiff in relationship to his religious freedom. Therefore, it is not irrelavant and the defendant's objection

should duly be overruled.

11. This fact, like that in #10 Id., was undisputed by defendants but objected to on grounds of irrelevant and inadmissable evidence. Again, the Plaintiff requests that this objection be overruled on the grounds set out by Plaintiff in #10 Id.

12. This fact, like that in #10 Id., was undisputed by defendants but objected to on grounds of irrelevant and inadmissable evidence. Again, the Plaintiff requests that this objection be overruled on the grounds set out by Plaintiff in #10 Id.

13. This fact was disputed by defendants. The plaintiff rejects the defendants characterization of this statement. The plaintiff has had over 188 infractions. This court, the defendants, and the triers of fact can go over each and everyone of those infractions as well as the original infraction that caused this complaint and categorically list each and every time the plaintiff has brought up due process issues in his disciplinary appeals and hearings and was unable to have them judicially reviewed for a lack of a "liberty interest". They can then analysis each and everyone of those claims in order to determine which one's would of been overturned under disciplinary due process law in prison cases, if a liberty interest

could have been found, as the plaintiff has already done each and every time he challenged these disciplinary proceedings after being infracted. Then they can note, how many of those claims, that would have been overturned had a liberty interest been provided, versus how many of these infractions are routinely and regularly upheld by prison disciplinary personell. The results of those findings, which would be unduly burdensome and redundant, would prove that the Plaintiff's SUF #13 is indeed undisputed beyond the defendants ability to dispute this fact. In fact, if the court would like to do an in camera review of the plaintiff's disciplinary records including recordings of those disciplinary hearings, the plaintiff is confident that had a liberty interest been available, this court would have granted relief in the favor of the plaintiff in the majority of the cases where he exhausted his remedies through a disciplinary appeal.

The defendants also objected this statement on the basis of irrelevancy and inadmissability. Again, the Plaintiff requests that this objection be overruled on the grounds set out in #10 Id. This fact goes to the weight of "substantial burden" put on the plaintiff's religious freedom.

14. This was again undisputed by defendants

and objected to like #10 Id., because of irrelevance and admissability. The plaintiff, again, requests that this objection be overruled on the same basis as #10 Id.

15. Undisputed

16. Undisputed

17. This fact was disputed by the defendants, in what the defendants describe as "Whitford's attempt to mischaracterize his violent and assaultive behavior." The plaintiff objects to this statement. The plaintiff's civil rights have continually and constantly been violated. In addition to that, prison personell continue to violate the principals of due process, regardless of whether or not they or the court has determined if there has been a "liberty interest" in order to take away the plaintiff's First Amendment-constitutional right-to Freedom of Religion. They violate their own due process proceedures with nobody to hold them responsible and find the plaintiff guilty of prison infractions that are used to label him and to mischaracterize him as a violent and assaultive person. If this Court would conduct an in camera review of the alledged violations of constitutional rights, physical and mental abuse of the plaintiff by prison personell, and the grievances and activism that the plaintiff has participated in they would clearly see the true "substantial burden" on the plaintiff's rights.

Furthermore, the plaintiff's cannot dispute the fact that the plaintiff is a civil rights advocate and has filed over 500+ grievances. That fact is undisputable based on the contents of the 500+ grievances that the plaintiff has written since being incarcerated in Montana State.

The defendants claim that "Whitted has no right to engage in civil disobedience because civil disobedience is, by definition, breaking the law or violating prison rules." Doc. 66 @ page 80. That statement is definately disputed by the plaintiff. See e.g., "Guilty But Civilly Disobedient: Reconciling Civil Disobedience and the Rule of Law 28 Cardozo L. Rev. 2083, 2085." ("Although definitions of civil disobedience abound, they generally concur on the fundamental notion that it entails a conscientious violation of the law as a protest over an unjust law or governmental policy and therefore, is morally justified..." "The concept of disobedience poses no dilemma under an illegitimate regime because no duty of obedience pertaines, Further, even under a democracy resting on popular sovereignty, conditions may deteriorate so badly that revolution is justified." ... "Also central to the philosophy of civil disobedience stands the requirement that disobedients accept punishment for their illegal acts, again in order to demonstrate their fidelity to law and the limited nature of their defiance.")

So, therefore, civil disobedience maybe unlawful but as long as one is willing to accept the consequence of his or her action than it is what it is. The right

like the right to self-defense or the right to carry arms is a fundamental and <u>inherent</u> <u>right</u> that nobody and no government can take from a person. Although the plaintiff may be in prison and incarcerated, it doesn't mean that staff can assault and abuse him as long as he has the ability to pick up a weapon or to defend himself in other ways, it is not the government that makes that right but the mindset and ability of the individual and his beliefs that are all qualities that reside within his soul that make that right available to him. This is what made the United States of America what it is today. When the founding fathers of this country committed treason against Great Brittian and utilized civil disobediance in their revolution against the mother country, they did so knowing that each one of them could be hung for sedition.

The plaintiff is willing to accept the consequences of his desciplinary proceedings as long as they are done so in accordance with due process, until that time he will utilize whatever means are available to bring attention to the arbitrary and capricious actions of the MSP Administration and it is his inherent right to do so.

The defendant's claim that the plaintiff is a violent and assaultive inmate, yet he has only been charged in two misdemeanor cases. If he was indeed as violent and assaultive as the MSP admin. claims him to be, it would be logical to conclude that his actions would involve felonious action which it doesn't. This in and of itself is proof

that his actions are more peaceful than not and that prison officials are utilizing trumped up documentation to make the plaintiff look worse than he really is. The defendant's argument on this basis should be found unpersuasive.

18. The defendants dispute this fact on the same basis as that found in #17 Id. The plaintiff invokes the same argument in #17 Id. here. An exsamination of disciplinary reports, hearing, appeals, and grievances should make this fact and that found in 17.Id. undisputed in fact.

19. Undisputed.

20. This fact was disputed and is considered to be an opinion of Mr. Whitford by defendant. However, this is not an opinion, it is a fact, and it is stated so in DOC Policy and MSP Procedure 3.3.8. Evidence of this are the policy and procedures themselves. The Policy states, in section I, "The Department of Corrections provides visiting priviledges for offenders consistent with facility security requirements...". A reading and general overview of the offender visiting policy will present the reader with information on facility visiting, security procedures regarding visitors, volunteers, and employees, including sex offender visiting, searches, supervision, contraband, visiting conditions, visiting terminations, suspensions, and revocations etc. Contrary to objection of the defendant's, these visiting rules are used in conjunction with powwows and special activities

and all visitors, inmates and visitors alike. All activity sponsors, religious volunteers, and religious programming staff are all supervised under MSP 1.3.16a and DOC 1.3.12 (See 5.6.1 (III)(H) "Religious Program Staffing" in general) ("All security procedures and requirements will be followed to gain such access")

Therefore, the visiting rules apply to everyone including official visitors, religious personnel, family and friends, etc. So, they are relevant and this is nothing other than an attempt to pull the wool over the eyes of the courts.

26. It is not the "opinion" of Mr. Whitford that makes this fact undisputed. It is the common sense analysis that makes it undisputed. It is clearly a visible observation after careful study of the policy, practice, and custom that Mr. Whitford has had to participate on a regular and routine basis in order exersize his freedom of religion in the MSP setting. Based on these policy's, customs, and practices and Mr. Whitford's experience in the challenge to such customes, policies, and practices, in addition to his life experience, in practicing the Native American way of life at MSP he is able to articulate exsactly how they are redundant. That observation can be equally observed through the common sense and study of the policies, customs, and practices described herein. As for the objection, the defendants can read and interpret exsactly what the plaintiff

is trying to say and it is an absolutely absurd objection that should be overruled on its face especially due to the plaintiff's pro se status as an inmate litigant.

22. The defendants object to this statement on the basis that it is "unclear" without any other explaination and on the bases of the plaintiff's citations to Exhibits 1, 10, and 11.

Concerning the objection as to the statement being "unclear". There are 4 activities that the plaintiff has brought to the attention of the court. (i.e., Election of Pipe Carrier, Drum Group Practice, Sweat-Set-up, and special Activities).

Read together with #21.1d., it is clearly understandable. The defendant's are simply attempting to read the SUF so seperately that one fact cannot be based on another fact. The plaintiff clearly explains in his exhibits what he means. If the SUF and exhibits are generally read, it is easily asertainable to understand what the plaintiff is saying.

For instance, take sweat setup and the sweat lodge ceremony as a whole. One is restericted for 6 months, one is not. Yet, in the plaintiff's life experience in the Native American sweat lodge activity, these two functions are not seperated. The sweat lodge ceremony involves both activities and they are not seperate. Here, the MSP officials

are in essence, attempting to create a piece meal ceremony under the guise of security concerns. However, these security concerns are unwarranted. Why? Because: 1) Both the restricted activity and the unrestricted activity are held at the same exsact place, 2) Both the restricted and unrestricted activity involve the same type of religious activity (i.e., the sweat lodge ceremony), 3) Both the restricted and unrestricted activity are attended by all of the same people (i.e., the sweat set-up crew sets up the sweat lodge and charges it with prayer and gets it ready to go; next, they don't go anywhere, the stay and wait for the second activity to begin when everyone else shows up to sweat. Therefore, both activities involve the sweat setup crew who sweats along the side of everyone else. So, why the restrictions? The only difference is the time. The sweat setup crew comes out maybe an hour or so earlier than everyone else. The actual sweat ceremony begins as soon as the sweat setup crew begins to set the sweat lodge up. It's all one ceremony. In all reality, everyone should be able to help in the sweat setup phase of the sweat lodge ceremony, yet it is MSP who claims meaningless security issues in the most restrictive manner possible rather than the least restrictive. The analysis is the same with drum group vs pipe ceremony. Drum practice takes place in the same area of the RAC as does pipe ceremony. Drum practice is restricted, while pipe ceremony is not. There is drumming and singing at pipe ceremony but it is a different kind of drumming an singing utilizing the hand drum v.s. the powwow drum, so the activities involve the same type of religious

activity (i.e. drumming and singing). All of the same people who attend pipe ceremony would be the exsact same people who would attend drum group practice. (if they were not plagued by the six month infraction free stipulation). Again, the only major difference is the time frame. Each one has it's own hour and time. So, why the restrictions on one but not the other? It is obviously not the least restrictive means. Same thing with the election of the Pipe Carrier vs. the Pipe Ceremony. Since the defendants insist on seperating the three from a "Special Activity", these three activities don't involve a bunch of visitors comming to watch a show. They are all RAC activities.

As for the Special Activity, that is, the Powwow or Spritiual Gatherings. The same anology can be stated regarding Normal Visiting vs. Special Activities. First and foremost, Normal Visiting is not restricted unless visiting policy is violated. Since the plaintiff has never violated any visiting room policy, ever, he is allowed to visit during normal visiting hours, freely. This is even when he has been infracted for over 188 infractions. Even if those 188 infractions had occurred within the last six months. So, Normal Visiting is not restricted, while Special Activities are restricted. Why? It don't make sense. Special Activities involve Guests, Sponsors, Volunteers, and other "visitors". These visitors include children. Visiting security precautions have specific precautions

relating to sex offenders, contraband, searches of visitors, inmates, visiting areas etc. These security precautions apply to everyone equally regardless of weather it is a Special Activity or Normal Visiting. So, the same place could be used (i.e. the visiting area/room), it involves the same type of activity (i.e., Visiting), it involves the same people (i.e., inmates and outside visitors including children), and once again the major difference is the time frame. Normal Visiting has specific visiting time frames, a special activity such as a powwow would most likely be a yearly event. So, why all of the restrictions on one but not the other? The Normal Visiting activities happen in conjunction with the "Inmate Disciplinary Sanction Grid" attachment E of DOC/MSP Policy and Procedure 3.4.1 that states, "Generally an activity may only be restricted when the violation involves that activity or the rules regulating it." SUF e #19 (UNDISPUTED by defendants) (Emphasis added). That policy is the sole reason for the difference in a Special Activity vs Normal Visiting. And that is why the visiting policy is so relevant to the plaintiff's case. These analogies are explained in the Exhibits mentioned by the plaintiff to which the defendants object. But once again, they fail to take the pro se prisoner rule into effect or consideration.

18 of 20

23. The defendants basically restate the exsact fact in 23-SUF, which should be considered as evidence that the plaintiff has stated a clear fact which is undisputed by the defendants. The defendants seem to be understanding the plaintiff clear enough to restate 23-SUF in their own language and terms which is undisputed by the plaintiff. As to the defendants objection, again they fail to take into consideration the plaintiffs pro se status.

24. Undisputed by Plaintiff.

25. Undisputed by Plaintiff.

26. Undisputed by Plaintiff.

27. Undisputed by Plaintiff.

28. Undisputed by Plaintiff.

29. Undisputed but objected to as irrelavant and inadmissable by Plaintiff because the Plaintiff is not contesting the ability to attend the lowside powwow. The plaintiff is attempting to secure a powwow on the high side, seperate and distinct from the lowside, via MSP Procedures for a Special Activity which would otherwise be available to the Plaintiff and others

who are similarly situated and who are prohibited due to the six-month infraction free stipulation. The defendants wrongly assume the plaintiff is talking about attending the Low Side powwow. Spiritual activities are also available to High Side inmates who have six months clear conduct.

30. Again, undisputed but objected to by the plaintiff for the same reason set forth in #29. Id.

31. Again, undisputed but objected to by the plaintiff for the same reason set forth in #29. Id.

Done this 8th day of November, 2023

Signed _____
Makueeyapee N. Whitford
#3015941
Montana State Prison
700 Conley Lake Rd
Deer Lodge, MT 59722