UNTIED STATES DISTRICT COURT
DISTRICT OF MONTANA
Helena Division

| | |
|---|---|
| MAKUEEYAPEE D. WHITFORD,<br>Plaintiff,<br><br>v.<br><br>BRIAN GOOTKIN and JIM<br>SALMONSEN,<br>Defendants, | CAUSE NO. CV 22-70-H-BMM-JTJ<br><br>DECLARATION IN OPPOSITION TO THE<br>DEFENDANTS MOTION FOR SUMMARY<br>JUDGEMENT |

MAKUEEYAPEE D. WHITFORD states:

1. I am the plaintiff in the above entitled case. I make this declaration in opposition to the defendant's motion for summary judgment on my claims concerning RLUIPA violations regarding what the defendant's call a 6 month clear conduct policy that is otherwise refurred to as a "Good Behavior" policy.

2. This policy restricts my ability to participate to various activities of my religion as an American Indian and a member of the Blackfeet Nation.

3. The defendant's affidavit, in summary, claims that there is no "substantial burden" on the free exersize of my religion because of the six months' clear conduct policy, related to 6 exersizes of my religion which are prohibited by MSP policy contrary to the requirements of RLUIPA (i.e., the ability to stand for election as pipe carrier, the ability to possess and carry my own medicine pipe, the ability to set up sweat cereomonies for sweat lodge, the ability to stand for election as road man, the ability to participate in drum group activities, and the ability to participate in an Annual Spiritual Gathering(a/k/a Powwow))

4. The defendants are not entitled to summary judgment because there are genuine issues of material fact to be resolved. These issues are identified in the accompanying Statement of Disputed Factual Issues filed by the plaintiff pursuant to Local Rule   of this district court. The facts are set out in this declaration.

5. The State of Montana's Department of Corrections and the Montana State Prison, have a six month infraction free/clear conduct rule that specifies that anyone who is not six months infraction free and have at least six months of clear conduct before an inmate can participate is not allowed to take part in certain aspects of their religion. See Doc. #56, Defendant's Statement of Undisputed Facts, §21, §36, §42, §52, and §49.

6. This six month clear conduct restriction comes into effect whenever anyone is infracted with a major infraction and I was infracted five times with major infractions since August 16, 2023. Therefore, I am unable to participate in these ceremonial functions and religious activities which prevent me from exersizing my religion. See Doc. #56, Defendant's Statement of Undisputed Facts, §17.

7. This policy creates a substantial burden on my rights because it restricts me from participating in these religious functions and activities, the policy is unnecessary because there are already policy in place in order to provide for the safety, security, and orderliness of the facility, and in the defendant's own word the policy acts an incentive on future behavior that has not even occurred yet. See Doc. #53, Exhibit 10, Disciplinary Policy and Procedure; and, Doc. #55, Page 24.("The clear conduct policy is not punishment at all but is rather an incentive for inmates to demonstrate exemplary behavior.")

8. The clear conduct policy, contrary to the defendant's opinion, is a "punishment" that is put into place as a sanction on future behavior, i.e., the ability to practice one's religion. Regardless of whether the defendant's want to call it an "incentive" it deny's me the right to practice my religion freely. See Doc. #55, Page 24. ("The clear conduct policy is not a punishment at all but is rather an incentive for inmates to demonstrate exemplary behavior.")

9. As a so called "incentive" the policy has a major and substantial burden upon the freedom of religion for American Indian's, that results due to any policy violations that I make. Therefore, it is handed out as a sanction on future behavior at the time that I am infracted and break any rule violation. To "punish" means 1. to impose a penalty on for a fault, offense, or violation; and, 2. to inflict a penalty for the commission of (an offense) in retribution or retaliation or as a deterent. According to the Merriam-Webster's "Dictionary of Law"(2016) by Merriam-Webster, Incorporated. An "incentive" on the otherhand, means 1. motive or incitement to action; and, 2. payment or consession to stimulate greater output by workers. According to The Oxford: New Desk Dictionary and Thesaurus, 3rd. Ed.(2009) by the Berkley Publishing Group. So, it is my understanding that an incentive is something good that excites a person to want to do what is being requested. In this case "good behavior." Taking away someones religious activities is not an "incentive" by these definition, it is a punishment! The defendant's are attempting to use an euphamism for the punishment that they are handing out in this case by calling it an incentive.

10. The Constitution of the United States, states: "Congress shall make no law respecting an establishment of religion, or prohib-

iting the free exersize thereof;" 1st Amend. Const. of the U.S.

11. In my case, it is clear that this "good behavior" policy serves nothing else but to prohibit my religious exersize unless I remain infraction free for a 6 month period.

12. The fact that MSP officials prohibit my ability to participate in my religious exersize is in fact a substantial burden in and of itself, and according to the Constitution of the United States no less.

13. Additionally, the Department of Corrections and Montana State Prison have established Policy's and Procedure's that are used to secure the safety, security, and health of the staff and inmates within their care. See DOC/MSP Policy and Procedure 3.4.1, Exhibit 10 of Doc. #53. (See, MSP Procedure, 3.4.1(I) which states, "Purpose- To implement an inmate disciplinary system that serves to maintain order in the facility and protect the public, inmates, and staff through the impartial application of a fully developed, well-understood set of rules, regulations, and hearing procedures that incorporate all applicable due process requirements."

14. In addition to that policy, See DOC/MSP Policy and Procedure 3.3.8, Exhibit 11 of Doc. #53. (See, MSP Procedure, 3.3.8(I) which states, "Purpose-Montana State Prison (MSP) provides visiting privleges for inmates consistent with MSP security requirements and encourages family ties and supportive relationships important to the stabability of inmates while incarcerated and upon release." Therefore, in addition to the normal disciplinary process, there are special visiting regulations made to regulate visitors. See MSP Procedure, 3.3.8(III)(G) which is titled, "Terminations, Suspensions, or Revocations" and attachments A, B, and C of that document which specifies the types of terminations,

suspensions, and revocations are available and why they are made. Attachment B of this policy provides Visiting Revocation/Suspension Notice to visitor's and inmate's which gives them the types of Major and Minor violations that can occur in order to revoke or suspend visiting privledges.

15. The two policies listed in #13-14 above, are evidence of a first tier of policy and procedures relating to the safety, security, and health of the inmates, staff, and visitors at the Montana State Prison.

16. The two policies listed in #13-14 above, are evidence that the good behavior policy that requires inmates to remain six months infraction free are in fact being utilized as a second tier of policy and procedures to punish offenders future behavior that has not yet occurred. The fact that they are second tier policies means that the policies are unnecessary to the compelling government interest that is already in place.

17. In fact, the six month infraction free policy is contrary to the Disciplinary Policy and Procedure found in DOC/MSP 3.4.1, and specifically 3.4.1(Attachment E) which states in pertinent part, "Generally an activity may only be restricted when the violation involves that activity or the rules regulating it." This is evidence of the fact that the current policy as it relates to American Indian religious exersizes complained of in this complaint are not the least restrictive policy and procedures available.

18. Another concern that I have, is the fact that I am repeatedly targeted because of my political activism and atypical civil disobedience. This in turn leads to numerous infractions where the Montana State Prison's Disciplinary Department in conjunction with Correctional

Officers and staff, who no doubt know and work with eachother, charge, find me guilty, and sanctions me without due regard for their own policy and procedures which result in me being sanctioned with six months restriction on my ability and freedom to practice my religion. In my own opinion, the policy creates a clear liberty interest that hinges on my Religious Freedom. However, the fact that that claim was screened out at the begining of this complaint, it is important to show the court over and over again in order to create a record of what I believe to be a "liberty interest" which is the only way to have my due process violations to the courts with the ability to recieve judicial review of these decisions that hinge on my rights to practice my religion. They are not in and of themselves available for judical review at this time, but they present material evidence of the fact that the policy does present a "substantial burden" which effects other rights, i.e., due process in disciplinary hearings, and which can result in the good behavior policy going into effect at the time that I am found guilty of a major infraction. The fact that I have recieved so many infractions that have resulted in my religious exersize being taken from me each and everytime that I am infracted. According to the Defendant's Statement of Undisputed facts, between 2018 and 2022, I "amassed disciplinary infractions for more than" thirty-five infractions alone. See Doc. #56, §4. of Defendant's SUF.

19. The fact that the Undisputed Facts of the Defendant's attempts to infer that the six month infraction free stipulation does not apply to me because the "Powwow" is held on the "Low Side" vs the "High Side" is an incorrect statment of facts as it relates to me and other American Indian offenders. In fact, DOC/MSP Policy and

Procedure 5.5.101(III)(D), Requirements and Limitations, states, "Each special activity is limited to one per calendar year for each of the two compounds (low and high). For exsample, two Discovery Weekends may be approved each year; one for the high compound one day and one for the low compound, a few weeks or months earlier or later." Therefor, the policy and procedure by its own terms allows for both high side and low side powwows. See Exhibit 1, Doc #53. Which means that those inmates in HSU-1 can request their own powwow and do not have to go to the same powwow that is being held on the low side.

20. The compelling government analysis as shown above, applies to all of the religious exersizes that are being complained of in this case, leaving the six month infraction free stipulation as an unnecessary limit on the practices of my religious freedom.

21. Just as the compelling government analysis applies to all of the religious exersizes that are being complained of in this case, as shown above, the six month infraction free stipulation on my religious exersizes are also not the "least restrictive means."

22. As to the Powwow, the visiting policy and procedures provide for the security, safety, and health of the staff, visitors, and inmates. See visiting policy statement above. Additionally, the inmate discilinary procedure, also mentioned above, provides for the safety, security, and orderliness of the facility and it addresses the least restrictive means by saying, "Generally an activity may only be restricted when the violation involves that activity or the rules regulating it." The defendant's bring issues to the forefront regarding assaults and introduction of contraband issues as reasons that the six month infraction free stipulation exists, but this has not been substantiated

and evidence proving or disproving this fact has not been provided to me and thus will need to be requested via discovery. Either way, it is still not the least restrictive means of accomodating my rights and others rights, which has been shown above.

23. As to the personal pipe, I have mentioned other ways in which the facility can accomodate this activity and religious item at a less restrictive means, i.e., the personal pipes can be kept in the RAC and the pipes smoked at the RAC areas and during ceremonies or the defendant's can create a smoking area where American Indian inmates can smudge and smoke in their daily prayer time.

24. As to the sweat set up crew, as stated in my disputed facts, the sweat ceremony begins at sweat set up. The defendant's effort to turn the ceremony into a peicemeal ceremony by breaking it up into seperate parts and claiming that it doesn't start until the main group of American Indian participant's are present is an attempt to mislead the court as to what constitutes a sweat ceremony. A sweat ceremony has its own procedures that are inherent in its definition as a ceremony that are unique to American Indian people and I am uniquely qualified to understand and present those procedures to the court. See First Affidavit of Makueeyapee D. Whitford, Doc. #53. (I was born to a traditional family, was raised in the traditional values of my people, and went to colleg for Blackfeet Studies and Blackfeet Language.) These spiritual procedures begin before the sweat even begins to be set up, while it is being set up, and when the participant's are ready to sweat, and continues until they are finished sweating.

25. As to the "Drum Group" activities. Again, I am uniquely qualified to understand and present these issues to the court because

of everything that I have already mentioned above and by the fact
that I am a Singer, Drummer, and Dancer of my people. I am uniquely
aware of the differences in songs and in the ceremonies involving
Spiritual Gatherings and Sweat Ceremonies. Again, the defendant's
are attempting to mislead or simply don't understand the songs, concepts,
and ceremonies involved. The Spiritual Gathering (aka Powwow) is
a seperate ceremony that is different from the Sweat Ceremony. Here
the defendant's are attempting to mix the two together. There are
both drums for the sweat ceremony and one big drum for the Spiritual
Gathering. The big (Powwow) drum is the drum that people attend the
Drum Group activities in order to practice on. For the sweat, there
are smaller round drums, called "hand drums" that are used in sweat
ceremonies. As with the types of drums, there are also different
types of songs that are sung in conjunction with each type of ceremony
that are unique to those ceremonies. In this case, the defendant's
are trying to tell the court that drum's are available at the sweat,
and that is true. It is also true that the big drum can be checked
out in order to sing at the sweat ceremony. However. there is not
enough time to do both types of singing and druming while we are
sweating. We practice the big drum in order to prepare for powwow's
because that drum is the drum that we use to perform a Spiritual
Gathering. To practice on the powwow drum takes time to sing the
songs, exersize our voices, and get them ready over time, often months
in order to get their voices right, so that they can sing and drum
correctly at a Spiritual Gathering. See the Statement of Disputed
Facts and the accompaning affidavits. That is why there is a seperate
activity time to practice on the big drum vs to sweat, and in this
case the defendant's are attempting to group them together in order

mislead the court that they are already being accomodated by allowing drumming at sweat, which is simply not the truth.

26. As to the Pipe Carrier election. Again, see my qualifications above and in my Statement of Disputed Facts. The pipe carrier position is more than the defendant's are attempting to lead the court to believe. See affidavits attached to Statement of Disputed Facts. The pipe carrier does alot more than mixing tabbaco, bearberry, and kinicknick. Out of most of the exersizes of religion, this one is the most closest in place, time, and people. There should be no issue with allowing anyone to carry the pipe who has infractions within the last six months because it simply is not the least restrictive means. The pipe ceremony is attended by everyone, regardless of infraction history, it is held in the same place at the RAC, and it is held at the same time.

27. As to election as a Road Man, that is not a position other than spiritually in order to refer to the person who is actually leading the sweat. Each sweat, someone is allowed to run the sweat, that person usually volunteers. The Road Man possion, like the pipe carrier position, is not a wanted position. The reason why is because of the immense spiritual responsibility. But, there is not a formal election of a Road Man. So, I don't know what lead the defendant's to raise this as a claim. All I attempted to explain was how the sweat set up crew worked. Usually, the Pipe Carrier, the Road Man, and some helpers are put on the Sweat Set Up Crew; what I was saying, was that should I ever volunteer (which may or may happen at sometime or the other) to run the sweat as the Road Man, I would need to have access to the Sweat Set Up Crew, in order to be at the sweat set up phase of the ceremony. The Road Man is already a term that has

been in use for a long long time and it is not some special election or anything like that. Therefore, the defendant's must be confused about this which shows how much they are aware of the ceremonial part of my religion. That should be taken as evidence that they are not knowledgable about this religion which they are seeking to modify by prohibiting me from participating if I have less than 6 months clear conduct.

I swear under the penalty of purjury and the laws and constitutions of Montana State and the United States of America, that everything that I have stated herein is the truth to the best of my knowledge and belief.

Done this 13 day of ~~October~~ November, 2023.

Signed, _____
Makueeyapee D. Whitford
#3015941
Montana State Prison
700 Conley Lake Road
Deer Lodge, MT 59722