IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| MAKUEEYAPEE D. WHITFORD, | CV 22-70-H-BMM-JTJ |
| Plaintiff, | |
| vs. | ORDER |
| JIM SALMONSEN and BRIAN GOOTKIN, | |
| Defendants. | |

Pending before the Court are Plaintiff Makueeyapee D. Whitford's Motions for an Injunction and for Summary Judgment. (Docs. 50 and 51.) Defendants have also filed a Motion for Summary Judgment. (Doc. 54.) The motions are fully briefed. Both motions for summary judgment will be granted in part and denied in part. Whitford's motion for an injunction will be denied.

**I. BACKGROUND**

The Court draws facts from the parties' Statements of Undisputed Facts ("SUF") and are undisputed unless otherwise noted. Whitford filed his initial Complaint on August 8, 2022. Whitford asserted two claims, a violation of his religious rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a) et seq., and a violation of his due process rights in a Montana State Prison ("MSP") disciplinary hearing. (Doc. 2.) The Court

1

screened the Complaint pursuant to 28 U.S.C. § 1915, determined that it did not state a due process claim, and directed service of the RLUIPA claim. (Doc. 8.)

Whitford amended his Complaint on January 9, 2023, to focus on and elaborate his RLUIPA claims. (Doc. 21.) Whitford filed a timely and properly supported motion for summary judgment on September 18, 2023. (Docs. 51, 52, and 53.) Defendants filed their own motion for summary judgment and associated documents on September 22, 2023. (Docs. 54, 55, and 56.) Both motions are fully briefed. Whitford also has filed a fully briefed motion for an injunction regarding various issues related to his ability to litigate. (Docs. 50 and 59.)

Whitford is an inmate at MSP. Whitford has spent much of his time at MSP in some kind of restrictive housing, due to his 188 major disciplinary infractions, including assaults on staff and possession of weapons. (Docs. 56 at 2; 53 at 3.) Whitford disputes the validity of these infractions, not the fact of them. (Doc. 71 at 2.) As of August, 2023, Whitford no longer remains in restricted housing. Whitford now sits on the high side in MSP and has a cell to himself, due to his previous pattern of behavior. (Doc. 56 at 4 - 5.) Since August, Whitford has been charged with several disciplinary infractions, though these have not affected his current custody situation. (Doc. 56 at 5.)

Whitford is a member of the Blackfeet Nation and practices the religion of his people. (Doc. 66 at 5.) Whitford currently may attend sweat ceremonies and

pipe ceremonies, and other activities. (Doc. 52 at 3.) MSP has various policies and guidelines that govern religious practice. Whitford contends that these policies interfere with his ability to practice his religion in violation of RLUIPA. MSP generally requires an inmate to have six months of infraction-free conduct to engage in certain activities. Whitford contends this restriction illegally burdens his religious practices.

The practices at issue in Whitford's Amended Complaint are eligibility to be elected as community pipe carrier, ¶ 22; the ability to carry a personal pipe, ¶ 24; the ability to go to drum practice group, ¶ 26; the chance to be part of the sweat set-up crew, ¶ 32; and the right to attend a powwow, ¶ 37. Whitford's brief in support of his motion for summary judgment focuses on only four of these practices, passing over the ability to carry a personal pipe. (Doc. 52 at 1.) In his response to Defendants' motion, however, Whitford argues that the personal pipe, too, is a religious practice substantially burdened by MSP's regulations. (Doc. 70 at 23 – 26.)

Two policies are relevant to all these practices, other than the powwow. Many religious activities at MSP are governed by the Religious Activities Center ("RAC") Inmate Rules. (Doc. 66-1 at 15 - 16.) Native American practices specifically are also subject to a set of guidelines. (Doc. 66-1 at 20 et seq.) The Inmate Rules designate drum group and sweat set-up as "auxiliary groups," and

require six-months clear conduct for participation, as well as a demonstrated ability to "work well with a team." (Doc. 66-1 at 15, ¶ 11.)

The Native American guidelines include the criteria for participation in the pipe and sweat ceremonies, the selection of the pipe carrier, the selection of the sweat lodge setup crew, operation of the sweat ceremony and pipe ceremony, and drum group practice. (Doc. 66-1 at 20 - 29.) In part, the guidelines reflect the fact that the Native American religious activities take place outside the RAC and outside the direct supervision and line of sight of correctional officers. *Id.*

The sweat lodge set up crew is limited to four inmates, who are selected from volunteers by RAC staff. (Doc. 66-1 at 22.) An inmate must have six months' clear conduct to be eligible for selection. Pipe carriers are selected by the inmates. (*Id.* at 23.) If a pipe carrier receives a major disciplinary write-up, he loses his position. *Id.* There are two pipe carriers for the high side, one for each of the two units. (Doc. 55 at 15.) The pipes are stored in the RAC. MSP is an otherwise smoke-free environment. (Doc. 66-1 at 24.) Drum group practice, by policy, is an auxiliary group that is not considered part of any ceremony or religious activity. (Doc. 66-1 at 29.) An inmate must have six months of clear conduct to participate. *Id.* Powwows are a "Special Activity", governed by MSP 5.5.101. (Docs. 56 at 6; 56-5.) To participate in a special activity, an inmate must have six months' clear conduct prior to the date of the activity. (Doc. 56-5 at 3.)

4

## II. ANALYSIS

The parties' cross-motions identify the same legal framework for analyzing a RLUIPA claim but draw starkly different conclusions.

### A.  Standard for Summary Judgment

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Id*. A court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in the non-moving party's favor when deciding a motion for summary judgment.  *Id*. at 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007). In a

situation such as this, with cross-motions for summary judgment, a court must determine which facts must be undisputed for either party to prevail.

## B. RLUIPA

"RLUIPA provides that '[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution,' unless the government can demonstrate that the burden 'is in furtherance of a compelling governmental interest' and 'the least restrictive means of furthering that compelling governmental interest.'" *Jones v. Slade*, 23 F.4th 1124, 1139 (9th Cir. 2022) (quoting 42 U.S.C. § 2000cc-1(a)). The plaintiff bears the initial burden of demonstrating that an institution's policy constitutes 1) a substantial burden on 2) his exercise of religion. 42 U.S.C. § 2000cc-2(b). If he does so, the burden shifts to the government to establish that any burden reflects a compelling governmental interest and involves the least restrictive means of achieving that interest. "Although RLUIPA adopts a compelling interest standard, context matters in the application of the standard, and courts should act with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Jones*, 23 F.4th at 1141 (citation omitted.)

Defendants' initial response to Whitford's motion catalogues his failures to comply with the rules regarding his Statement of Undisputed Facts ("SUF"), including lack of pinpoint sites. (Doc. 65 at 2 – 3.) The Court agrees with some aspects of this argument as far as Whitford's need to support his position factually. The Court will construe liberally Whitford's documents as to his alleged typographical or organizational failures.

### 1. *Religious Exercise*

RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). The Ninth Circuit has "read RLUIPA's reference to "any exercise of religion" literally (and thus broadly in favor of inmates) to include not only "the belief and profession" of faith, but also individual "physical acts [such as] assembling with others for a worship service [or] participating in sacramental use of bread and wine." *Jones* 23 F.4th at 1141.

Defendants here question whether Whitford's religious practice includes setting up for a sweat, practicing drumming outside of the sweat ceremony, and putting his name in for election as a pipe carrier. (Doc. 65 at 3.) "What constitutes "religious exercise" under RLUIPA is not subject to exacting review." *Johnson v. Baker*, 23 F.4th 1209, 1214 (9th Cir. 2022). Whitford claims that they are. (Doc.

7

52-1 at 2.) For the purposes of this analysis, the Court will assume these are religious practices.

2. *Substantial Burden*

Under RLUIPA, Whitford bears the responsibility of making a *prima facie* showing that the challenged policy constitutes a substantial burden on the exercise of his religious beliefs. *Warsoldier v. Woodford,* 418 F.3d 989, 994 (2005). The RLUIPA substantial-burden test is the same as that used under the First Amendment. *See Warsoldier*, 418 F.3d at 995–96 (citing First Amendment cases to determine what constitutes a substantial burden under RLUIPA). "A substantial burden exists when the state places substantial pressure on an adherent to modify his behavior and to violate his beliefs. The burden must impose a significantly great restriction or onus upon such exercise." *Jones*, 23 F.4th at 1142 (internal quotations and citations omitted.) A substantial burden "must place more than inconvenience on religious exercise." *Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1067 (9th Cir. 2011). A practice that offends a plaintiff's religious sensibilities but does not force the plaintiff to act contrary to his or her beliefs is not a "substantial burden." *Navajo Nation v. United States Forest Service,* 535 F.3d 1058, 1063 (9th Cir.2008).

A substantial burden can take many forms. Cases evaluating regulations under RLUIPA discuss situations in which religious practices are banned outright,

8

and a variety of situations in which a regulation forces a religious adherent to choose to do something that violates his beliefs in a more subtle way. Substantial burdens have been found in *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 344–45, 347 (1987) (assigning Muslim prisoners to a work schedule that prevented them from attending Friday prayer services commanded by Qur'an); *Holt v. Hobbes*, 574 U.S. 352, 355, 359 (2015) (requiring Muslim prisoner to violate religious beliefs that forbade trimming his beard); *Warsoldier,* 418 F.3d at 992, 995–96 (requiring Native American prisoner to violate religious beliefs that forbade cutting his hair); *Greenhill v. Clarke*, 944 F.3d 243, 250–51 (4th Cir. 2019) (withholding participation in religious services "as an incentive to improve inmate conduct); and *Jones v. Carter*, 915 F.3d 1147, 1150–51 (7th Cir. 2019) (discouraging inmates from choosing halal meals by charging for halal meat).

The Ninth Circuit has recognized that actions short of an outright ban can violate RLUIPA:

> when a regulation "outright ban[s]" religious exercise, it amounts to a substantial burden. But we have also said that lesser restrictions may suffice. For example, we have recognized that government action that threatens "punishment []" to coerce a religious adherent to forgo her or his religious beliefs," or causes "substantial delay, uncertainty, and expense" to worship, may amount to a substantial burden.

*Johnson v. Baker*, 23 F.4th 1209, 1215–16 (9th Cir. 2022) (internal citations omitted). The Court has been unable to locate a case that addresses a similar restriction to the one Whitford faces here, where certain activities, but not all,

9

require a recent record of clear conduct. Whitford cites a Fourth Circuit case that he contends addresses a similar issue, but the Court finds it inapt. (Doc. 70 at 7 (citing *Smith v. Ozmint*, 578 F.3d 246 (4th Cir. 2009)). The Court considers whether the parties' submissions provide sufficient undisputed facts to determine whether a substantial burden exists.

a. Eligibility to be elected as community pipe carrier.

The Court will address the easiest case first. The parties' arguments regarding election as community pipe carrier are puzzling, because the policy that allegedly prevents Whitford from being the pipe carrier does not mention a six-month restriction.  (Doc. 56-4 at 4.) The parties point to no such restriction in their SUFs, though Whitford's submission assumes that it applies, and Defendants' respond to Whitford as though it does. (*Compare* Docs. 56 at 11, 53 at 2, and 66 at 3 - 4.)  Whitford's Amended Complaint states that he has the right to act as a community pipe carrier if elected by the people. (Doc. 21 at 7.) Pipe carriers are selected by the Native American congregation, though the procedure is not specifically detailed. (Doc. 56-4 at 6.a.) If one is chosen to be the community pipe carrier, one remains as such until "they resign, leave the facility, are moved out of their respective area/unit, or receive a major disciplinary write-up." *Id.*

It appears that Whitford currently would be eligible for election as pipe carrier, if there were a vacancy, and if his fellow practitioners would elect him. As

such, Whitford has not shown that MSP places a substantial burden on his ability to be the community pipe carrier. Defendants are entitled to summary judgment on this point.

### b.  The ability to carry a personal pipe.

MSP policies ban the practice outright, and thus, a substantial burden has been placed on it.

### c. The right to attend a powwow.

The parties struggled to agree about what restriction on a powwow is relevant to Whitford. Defendants first argued, in detail, that high side inmates like Whitford cannot attend low side events for security reasons, and that is why Whitford would be excluded. (Doc. 55 at 25 – 26.) Whitford responds that he is not talking about attending a low side powwow, but rather, a high side powwow, if one ever occurred. (Doc. 70 at 20 – 22.) Whitford asserts that because of the six-month policy, he would not be entitled to attend a high side powwow, and he implies that there could never be a high side powwow because "there are not enough people available to participate in a Spiritual Gathering on the high side due to the inherent issues of high side general population inmates." (Doc. 70 at 20.) A special event has several other requirements, and MSP denied Whitford's previous request for a powwow in 2018 because there was no staff sponsor for it. *Id*; Doc. 72-3. Defendants contend that Whitford lacks standing to assert a claim regarding a high

side powwow because none is scheduled, and thus, he has not been excluded from one.

At this point, two things are clear. First, there is no high side powwow scheduled. Whitford cannot carry his burden to show the six-month exclusion policy burdens his religious practice because, in this circumstance, there is no religious practice to burden. Second, any claim regarding a Special Activity is at best speculative at this point. Injunctive relief would not be possible or reasonable based on current circumstances. Whitford devotes part of his argument to available damages. (Doc. 52 at 7 – 9, 13 – 16.) The Court reminds Whitford that injunctive relief represents the only relief available to him on this claim.

The U.S. Supreme Court has concluded that states did not waive their Eleventh Amendment immunity for money damages under RLUIPA. *Sossamon v. Texas*, 563 U.S. 277, 288 (2011). Most courts that have considered the issue also conclude that RLUIPA does not contemplate the availability of damages against defendants sued in their individual capacity. *Rendelman v. Rouse,* 569 F.3d 182, 188-89 (4th Cir. 2009); *Sossamon v. Lone Star State of Texas,* 560 F.3d 316, 328-29 (5th Cir. 2009); *Nelson v. Miller,* 570 F.3d 868, 885-89 (7th Cir. 2009). These cases analyze RLUIPA specifically, unlike the Religious Freedom Restoration Act ("RFRA") cases relied upon by Whitford. The Court agrees with the majority analysis, though does not need to decide the issue at this point.

12

d.  The chance to be part of the sweat set-up crew.

The Native American Religious Programming Guidelines explain the duties of the sweat setup crew. (Doc. 66-1 at 22.) In brief, four designated inmates go to the RAC before the time of the sweat lodge ceremony and prepare the lodge, the fire, and the general area, under supervision of staff. This work involves moving tarps, rocks, firewood, rakes, and blankets. *Id.* Smudging is also allowed during this time. Whitford asserts that this process is not just a practical phase of the sweat but an integral phase leading up to the sweat. (Doc. 52-1 at 5.)

Whitford cannot be part of the sweat set-up crew until he has six months of clear conduct. (Doc. 56-4 at 3.) Even then, however, Whitford would have to be selected by the RAC staff as one of the few inmates who participate in that activity, which is not open to all. Whitford's brief asserts that the six-month policy represents a substantial burden on his religious practice. "The good behavior policy attempts to coerce inmates into adhering to a higher level of behavior other than what is normally required." (Doc. 52 at 7.)

By "normally required," Whitford refers to other disciplinary policies that prevent one from taking part in an activity the rules of which an inmate has specifically violated, i.e., one loses visits if one breaks the visiting rules. "Normally required" does not refer to the ordinary behavior required to comply with the institutional rules. (Doc. 53 at 3.) "The policy requires inmates to act

contrary to their beliefs by prohibiting them from participating in activities that they would normally participate in." (Doc. 52 at 7.)

Defendants contend that disallowing Whitford from setting up for the sweat does not substantially burden his religious practice. (Doc. 55 at 30.) Defendants rely on cases where an inmate was pressured to violate the precepts of his religion if he complied with prison regulations (*Warsoldier*) or attempted to satisfy basic needs (*Shakur*). Defendants take a narrow view of cases in which inmates are somehow punished for exercising their religion. (Doc. 55 at 24.)

The Court concludes for two reasons that the six-month restriction as it applies to eligibility for participation on the set-up crew does not impose a substantial burden on Whitford's religious practice. First, the six-month restriction on being eligible to be chosen to set up the sweat in no way forces Whitford to violate his religious beliefs. Nothing about the policy forces Whitford to make a Hobson's choice between good behavior and the practice of his religious beliefs. As stated above, a substantial burden "must place more than inconvenience on religious exercise." *Int'l Church of Foursquare Gospel*, 673 F.3d at 1067.

In this case, the thing that is stopping Whitford from doing everything he wants to do (other than possess a personal pipe) is his unwillingness to follow the general rules of the prison. Whitford has been disciplined for violating prison policies at least 188 times. (Doc. 56 at 2; Doc. 56-7 (Defs.' Ex. D).) Whitford

14

dismisses these violations as civil disobedience. Whitford claims to be willing to take the consequences of his actions until he has proven that the disciplinary process at MSP violates due process. Whitford contends this is his "right to do so." (Doc. 69-1 at 12.)

The Court will not wade into the details of Whitford's infraction history, except to say that it is extensive. His infraction history is the reason he has been in restricted housing and is now having difficulty participating in various activities and has a single cell restriction. Whitford currently can attend several religious group activities, such as pipe ceremony, talking circle, and sweat lodge. Whitford retains control of whether he is eligible to be chosen for sweat set-up, though not, of course, in charge of whether he is chosen. At worst, Whitford's choices result in a delay in participating in certain aspects of his religion. "[A] short term intrusion does not constitute a substantial burden." *Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998). Complying with ordinary prison regulations is, at most, an inconvenience and not a substantial burden on Whitford's religious practice.

Second, acting on the set-up crew is not available to all inmates as an ordinary part of their religious practice. It is a special responsibility given to a few. A prison cannot condition participation in religious practice contingent on an incentive program. *Greenhill v. Clarke*, 944 F.3d 243, 250 (4th Cir. 2019). This restriction applies only to one activity that is not available to every practitioner.

15

Whitford can attend the sweat, separate pipe ceremonies, and the talking circle. The Ninth Circuit has recognized that where plaintiffs sought "additional religious accommodations beyond those already provided by the prison to facilitate the religious exercise of their . . . faith," the plaintiffs did not plead a substantial burden on their religious exercise. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1125 (9th Cir. 2013).

> d. The ability to go to drum practice group.

Whitford cannot attend drum practice without clear conduct and thus, for the purpose of the following analysis, it will be considered substantially burdened.

The Court concludes that MSP policies do not place a substantial burden on Whitford's eligibility to be the community pipe carrier, to set up the sweat, or to attend a powwow. The Court will proceed to the Defendants' burden in the analysis, however, as to Whitford having access to a personal pipe and attending the drum group,

3. *Compelling Interest*

Prison officials cannot "justify restrictions on religious exercise by simply citing to the need to maintain order and security in a prison." *Greene*, 513 F.3d at 989–90. Instead, "prison officials must set forth detailed evidence, tailored to the situation before the court, that identifies the failings in the alternatives advanced by the prisoner." *Johnson v. Baker*, 23 F.4th 1209, 1217 (9th Cir. 2022) (quoting

16

*Warsoldier*, 418 F.3d, at 1000). "RLUIPA's requirements are not unlimited. If inmate requests for religious accommodations become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, a prison system may resist the imposition." *Fuqua v. Ryan*, 890 F.3d 838, 844 (9th Cir. 2018). "Courts are expected to apply RLUIPA's standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Hartmann v. Cal. Dep't. of Corr.*, 707 F.3d 1114, 1124 (9th Cir. 2013) (internal quotation marks and citation omitted).

Defendants assert security concerns as their overarching reason for restrictions on prisoner movement and possessions. Whitford agrees that security represents a compelling interest. (Doc. 21 at ¶¶ 41, 53.) Defendants provide sufficient firsthand knowledge to support their conclusions that the RAC and special activities are places where inmates pass contraband and unauthorized communications occur. (Doc. 56-2, Aff. of Stefalo, Ex. F.) Defendants maintain that a six-month clear conduct rule assures that participants have "demonstrated their trustworthiness."  In the powwow context, the Affidavit of Billie Reich, current DOC Grievance Manager, states that MSP put the six-month policy in place "to prevent inmates who have recently exhibited dubious behavior from

17

attending" "after inmates were assaulted, contraband was trafficked, sexual assaults occurred, and gang members planned and conducted fights and assaults." (Doc. 56-3 at 7.) Whitford disputes this fact, stating "if they can allow any religious activities to exist in the RAC then they can let the rest of the people attend these activities." (Doc. 71 at 11.) Whitford does not contest the fact that these illicit activities occur. Defendants sufficiently have supported the proposition that special activities and activities at the RAC are occasions for misconduct, such that MSP has a compelling interest in controlling access to those activities.

Defendants raise another compelling government interests related to possession of a personal pipe. First, MSP is a smoke-free environment, pursuant to Montana's Clean Indoor Air Act. (Doc. 56-3 at 9.) Inmates are prohibited from smoking or possessing tobacco or smoking accessories. *Id.* Staff and visitors likewise cannot possess tobacco at MSP. (Doc. 56 at 15 – 16.) Nonetheless, Native Americans are allowed to use pipes and tobacco in their ceremonies, only under specific Guidelines and close control. Defendants' position is that an inmate who possessed a personal pipe could use it to ingest tobacco in an unapproved manner. (Doc. 56-3 at 9.) Second, an inmate with a pipe in his possession could alter it into a weapon or other contraband. *Id.* Whitford disputes these points by saying that anything can be turned into a pipe or a weapon, and that the Native American pipe is a sacred item that will not be abused in that fashion. (Doc. 71 at 14.) Whitford

18

does not contest, however, that MSP possesses a compelling interest in an anti-

smoking environment or contraband control. Defendants have established

compelling interests in the policies at issue.

4. *Least Restrictive Means*

Under RLUIPA, the challenged policy must represent "the least restrictive

means of furthering [a] compelling governmental interest." 42 U.S.C. § 2000cc–

1(a). The standard is "exceptionally demanding." *Holt*, 574 U.S. at 364. If any

"less restrictive means is available for the Government to achieve its goals, then

the Government must use it." *Id.,* at 365. A prison "cannot meet its burden to prove

least restrictive means unless it demonstrates that it has actually considered and

rejected the efficacy of less restrictive measures before adopting the challenged

practice." *Shakur,* 514 F.3d at 890 (quoting *Warsoldier,* 418 F.3d at 996).

a. Drum Circle

Defendants do not explicitly state that they have considered other

approaches, but their discussion of the various issues of contraband and violence

related to group activities, and their imposition of a six-month conduct policy as a

result, prove sufficient to demonstrate that this restriction on drum practice passes

muster. The Court will not second-guess institutional decisions regarding security,

and though RLUIPA requires the Court to scrutinize Defendants' justification, it

will not question whether some shorter amount of clear conduct would be sufficient to achieve their aim of maintaining security in a group setting.

a. Personal Pipe

Defendants easily justify their policy of not allowing inmates to possess personal pipes in their cells. Whitford states that he has experience in other prisons, however, where inmates may use personal pipes in a controlled, outdoor circumstance. (Doc. 71-1 at 4.) Whitford proposes that personal pipes could be held in the RAC and used only for ceremonial purposes. (Doc. 71 at 14, 15.)

The Ninth Circuit has stated "we have found comparisons between institutions analytically useful when considering whether the government is employing the least restrictive means. Indeed, the failure of a defendant to explain why another institution with the same compelling interests was able to accommodate the same religious practices may constitute a failure to establish that the defendant was using the least restrictive means." *Shakur v. Schriro*, 514 F.3d 878, 890–91 (9th Cir. 2008) (citing *Warsoldier*). Defendants have failed to carry their burden to show that a less restrictive means could not lessen the burden on Whitford's religious practice, in other words allow some form of personal pipe use under controlled circumstances. The Court does not (and cannot) conclude that some policy could be developed. Defendants are not entitled to summary

20

judgment, however, as to the issue of some means could be developed to allow personal pipe use.

## III. WHITFORD'S MOTION FOR PRELIMINARY INJUNCTION

Whitford has moved for an injunction to ease his access to the courts. (Doc. 50.) Whitford has been able to meet all deadlines and litigate this case admirably. If Whitford believes that he has an independent action for constitutional violations related to access to the courts, he should proceed on that matter. The Court concludes that an injunction would not be appropriate regarding Whitford's ability to litigate this matter.

## IV.  CONCLUSION

The Court concludes that Defendants have not sufficiently supported their assertion that no less restrictive means exist regarding possession of a personal pipe. The Court possesses insufficient information at this point to fashion the limited and carefully designed injunctive relief required by the Prison Litigation Reform Act. No prospective relief shall issue with respect to prison conditions unless it is narrowly drawn, extends no further than necessary to correct the violation of a federal right, and is the least intrusive means necessary to correct the violation. 18 U.S.C. § 3626(a). "When determining whether these requirements are met, courts must give substantial weight to any adverse impact on public safety or the operation of a criminal justice system." *Brown v. Plata*, 563 U.S. 493, 530

(2011). The Court directs the parties to brief the narrow issue of the proper scope of any relief granted by the court regarding personal pipe use at MSP.

Accordingly, it is HEREBY ORDERED:

1.  Whitford's motion for summary judgment (Doc. 51) is **DENIED in part** and **GRANTED in part**, as described above.

2.  Defendants' motion for summary judgment (Doc. 54) is **DENIED in part** and **GRANTED in part**, as described above.

3. Each party's opening brief on the scope of appropriate relief must be filed by January 19, 2024. Further briefing will then proceed according to the Local Rules.

4. Whitford's motion for injunction is **DENIED**. (Doc. 50.)

5.  Whitford must immediately advise the Court and opposing counsel of any change of address and its effective date.

DATED this 20th day of December 2023.

Brian Morris, Chief District Judge
United States District Court