IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| MAKUEEYAPEE D. WHITFORD,<br><br>Plaintiff,<br><br>vs.<br><br>JIM SALMONSEN and BRIAN GOOTKIN,<br><br>Defendants. | CV 22-70-H-BMM-JTJ<br><br><br><br>**ORDER** |

The Court granted partial summary judgment to Plaintiff Makueeyapee D. Whitford ("Whitford") on the issue of whether Montana State Prison's ("MSP") ban on the use of personal pipes for religious purposes violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). 42 U.S.C. § 2000cc-1(a) *et seq*. (Doc. 73.) The Court directed the parties to brief the appropriate scope of relief. Both parties complied. (Docs. 77 and 79.) Whitford filed an additional brief on March 14, 2024. (Doc. 80.) The Court construes Whitford's additional brief as being, amongst other things, a motion for leave to file an amended complaint. Defendants filed a response to Whiteford's additional brief on April 1, 2024. (Doc. 81.)

**I. BACKGROUND**

1

The Court's prior Order described the full procedural and factual background of this matter and will not be repeated here. (Doc. 73.) Whitford is an inmate at MSP. Whitford is a member of the Blackfeet Nation and practices the religion of his people. (Doc. 66 at 5.) Whitford alleged various violations of his religious rights under RLUIPA, including the ability to carry a personal pipe. The Court concluded that Defendants had not carried their burden to justify a blanket restriction on the possession of personal pipes, given than Whitford could point to other jurisdictions in which the corrections facility had found a way to allow prisoners access to this part of their religious practice. (Doc. 73.) MSP's policy unlawfully imposed a substantial burden on Whitford's religious exercise to the extent that it completely banned his ability to possess a personal pipe.

The Court directed the parties to brief the appropriate scope of relief. Whitford filed his brief, captioned "Requested Injunctive Relief Regarding Person Pipe Use at Montana State Prison." (Doc. 77.) Defendants responded to this brief as though it were a motion for a preliminary injunction. (Doc. 78.) The Court construes Whitford's brief as his response to the Court's Order and, if anything, a motion for a permanent injunction. Defendants also filed their own brief on the appropriate relief. (Doc. 79). Whitford subsequently filed a brief detailing the scope of relief requested on March 18, 2024. (Doc. 80.) The Defendants filed a response to Whitford's subsequent brief on April 1, 2024. (Doc. 81.)

## II. ANALYSIS

To be entitled to a final injunction, a plaintiff must demonstrate the following elements: "(1) actual success on the merits; (2) that it has suffered an irreparable injury; (3) that remedies available at law are inadequate; (4) that the balance of hardships justif[ies] a remedy in equity; and (5) that the public interest would not be disserved by a permanent injunction." *Indep. Training & Apprenticeship Program v. California Dep't of Indus. Relations*, 730 F.3d 1024, 1032 (9th Cir. 2013). Whitford successfully has met this test. Whitford has prevailed on his claim that Defendants unlawfully burdened his right to use and possess a personal pipe for religious purposes. Under RLUIPA, the appropriate relief would be injunctive. This injunctive relief would take the form of an order that directs Defendants to accommodate, to the extent they are able, Whitford's religious practices. The public interest would not be harmed by an injunction that further complies with the Prison Litigation Reform Act.

### A.  Whitford's Proposal

Whitford proposes a small "sacred item box" that would be kept in an inmate's cell. (Doc. 77 at 5.) The religious items in the box would be subject to specific procedures related to searches. As a result, the box itself could be removed from the cell and taken to religious staff to search under appropriate protocol. (*Id.*, at 6.) Regular staff may not search the box. Staff can request a visual inspection of

3

the contents of the box, however, and the inmate would take all items out and display them for staff to review. (*Id*., at 7.) During an ordinary search, an inmate could remove the box himself to avoid its contents being treated improperly. (*Id*., at 8.)

In support of this proposal, Whitford asserts that under current circumstances, a cell search occasionally results in destruction or desecration of religious items. (*Id*., at 8 and 10. (Whitford's document is either numbered or scanned out of order in the electronic record, but the correct pages are there, and the proper order can be discerned.)) Whitford further elaborates these concerns regarding searches to other sacred items. (Doc. 77 at 28 – 31.)

Whitford also proposes that there be a time for the use of his personal pipe outside the communal ceremonies. (Doc. 77 at 33.) In support, Whitford states that inmates are already burning sage, against regulation, which could be remedied by providing authorized daily opportunities to smudge, smoke, and burn religious medicines and incenses. (*Id*. at 33 – 35.) Whitford asks for this new policy to cover all institutions governed by the Montana Department of Corrections, and not just MSP. (Doc. 77 at 2, 4.)

### B.  Defendants' Proposal

Defendants' proposal would allow inmates to purchase a pipe from canteen in the same way that they would purchase other religious items. (Doc. 79 at 4.)

Defendants' proposal includes an exhibit of the pipe that they intend to offer. (Doc. 79-1, discussed at Doc. 79, 4 – 5.) The pipe would be of a size and made of materials unlikely to result in security concerns. (*Id.*) Defendants propose to build a storage area for these pipes in the Religious Activities Center or in the Work Release Center. (Doc. 79 at 4.) Inmates would have access to these pipes for the sweat and pipe ceremonies only, and only for use in compliance with the Montana Clean Indoor Air Act. (Doc. 79 at 4 – 6.) MSP staff would provide the mixture of tobacco needed for smoking during these times.

### C. Appropriate Relief under the PLRA

Under the PLRA, no prospective relief shall issue with respect to prison conditions unless it is narrowly drawn, extends no further than necessary to correct the violation of a federal right, and is the least intrusive means necessary to correct the violation. 18 U.S.C. § 3626(a). "When determining whether these requirements are met, courts must give substantial weight to any adverse impact on public safety or the operation of a criminal justice system." *Brown v. Plata*, 563 U.S. 493, 530 (2011) (discussing 18 U.S.C. § 3626(a)(1)).

"The PLRA mean[s] just what it says—before granting prospective injunctive relief, the trial court must make the findings" the PLRA mandates. We call those findings the "need-narrowness-intrusiveness" findings for short."

*Armstrong v. Newsom*, 58 F.4th 1283, 1293 (9th Cir. 2023) (internal citations and quotations omitted.)

    1. Need

"RLUIPA provides that '[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution,' unless the government can demonstrate that the burden 'is in furtherance of a compelling governmental interest' and 'the least restrictive means of furthering that compelling governmental interest.'" *Jones v. Slade*, 23 F.4th 1124, 1139 (9th Cir. 2022) (quoting 42 U.S.C. § 2000cc-1(a)). The Court's findings related to need are those that supported granting partial summary judgment to Whitford. (Doc. 73.) Whitford successfully demonstrated that MSP's outright bad substantially burdened his ability to possess and use a personal pipe for religious practices. Defendants did not mee their burden to establish that the restrictions were the least restrictive means of furthering a compelling governmental interest. (Doc. 73 at 20.) Thus, to provide relief, the Court will fashion a remedy that allows inmates at MSP some ability to possess and use a personal pipe for religious purposes.

    2.  Narrowness

"Narrow tailoring requires 'fit' between the [remedy's] ends and the means chosen to accomplish those ends. The scope of the remedy must be proportional to the scope of the violation, and the order must extend no further than necessary to

remedy the violation." *Brown v. Plata*, 563 U.S. 493, 531 (2011) (internal citations and quotations omitted.) The Court must balance the needs of Whitford and fellow Native American inmates with the security needs of the institution and the public. The remedy must respect Whitford's religious practice without wading into matters beyond the scope of the evidence provided in support of it or other prison matters.

For this reason, the Court must reject Whitford's proposal of a sacred items box to be kept in the individual cells of Native religious practitioners. Whitford's proposal seeks to remedy a matter that was not before the Court on summary judgment; that is, the treatment of sacred items during cell searches. To the extent the box would be intended to protect those items from improper handling, Defendants' remedy of a separate secure location for the pipes serves that purpose. But Whitford's proposal invades the domain of the concern raised in Defendants' summary judgment briefing about contraband in cells. (Doc. 56-3 at 9.) Whitford's further assertions that smudging and other fire-related activities already occur despite their ban contributes to the conclusion that allowing storage of the pipes in a designated area in the cells proves too broad or far-reaching a remedy.

Whitford also seeks a more liberal availability of the pipe for personal prayer use. (Doc. 77 at 32.) Defendants would restrict the personal pipe usage to the formal ceremonies that are already taking place. (Doc. 79 at 4). Whitford previously suggested that personal pipes could be held in the RAC and used only

for ceremonial purposes. (Doc. 71 at 14, 15.) These suggestions reveal a gap in the information before the Court. Whitford filed a detailed declaration in support of his motion for summary judgment that explained many of his religious practices. (Doc. 53-1 at 57 – 67.) Whitford refers to possession of a personal pipe, but he does not explain the role that pipe would play in his daily religious practice. Whitford hints at it in this briefing, when he discusses the illicit, unsanctioned smudging and praying that occurs. The parties discussed possession of a pipe in their summary judgment briefing, but the Court interprets the lack of discussion of it in Whitford's declaration to reflect a lack of daily practice. The Court declines to fashion a remedy that exceeds the facts as established in the record. Though Whitford seeks daily use of a pipe in his proposal, (Doc. 77 at 34), the Court concludes that Whitford has not established that daily use of it is required.

Whitford's proposal that inmates be allowed to use their pipes on their own, however, in an outdoor smoking area, does not appear foreclosed by the factual record. Free access to the storage units obviously would be impractical, and the Court will not direct Defendants to provide access at an inmate's request. Further, MSP's obligations under Montana's Clean Indoor Air Act, and limitations on the supply of tobacco, also restrict the feasibility of inmates using their personal pipes outside of ceremonial activities. The Court concludes that some access, at various

8

times and under controlled circumstances, may be feasible. Defendants will be directed to consider whether other, less structured, access may be possible.

Finally, the Court will not order Defendant Gootkin to create a Department of Corrections-wide policy. The Court's findings on summary judgment were based on the specific facts of the situation at MSP. The Court lacks a factual record about the circumstances at other facilities or the appropriateness of its remedy for those environments.

3. Intrusiveness

The core concern of the intrusiveness inquiry is "whether the district court has "enmeshed [itself] in the minutiae of prison operations," beyond what is necessary to vindicate plaintiffs' federal rights." *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1071 (9th Cir. 2010). The Court's remedy treads minimally into prison operations, as it is based on the framework provided by Defendants. The Court defers to the security and operational considerations of MSP leadership as to implementation.

D. **Whitford's Motion to Amend**

Whitford's March 18, 2024 response (Doc. 80) appears to be partially an objection to the Court's summary judgment order (Doc. 73), and partially a motion to amend his complaint. (Doc. 80 at 14.) Fed. R. Civ P. 15(a) permits a party to amend its pleading once as a matter of course either 21 days after serving it or 21

days after the service of a responsive pleading, whichever occurs first. Fed. R. Civ. P. 15(a)(1) provides that, outside of the 21-day window, a party may amend its pleading by leave of the Court.

Whitford wishes to amend his complaint to address the six-month infraction free policy at MSP, which Whitford asserts violates the rights of all Native American Inmates wishes to participate in religious activity at MSP. (Doc. 80 at 13-14.) Whitford's argument for leave to amend proves to be more appropriate as an argument against the Court's prior summary judgment order. Whitford fails to allege sufficient grounds to support his motion to amend. The Court declines to grant Whitford leave.

### III.  CONCLUSION

The Court has fashioned a remedy that responds to the established needs of the Native American inmates at MSP while respecting the legal and practical restrictions on Defendants' ability to operate the facility.

Accordingly, it is **HEREBY ORDERED**:

1. Defendants are directed to provide a secure area within MSP where inmates practicing Native American religions can possess personal pipes for religious purposes only. Defendants are to make the pipes available for ceremonial activities, and, to the extent possible, occasionally for individual use.

   The pipes at issue here would be held by MSP in a secure area.

2. Defendant shall make a personal pipe available for purchase by inmates. The pipes provided by MSP would be held in a secure area by MSP for use by inmates at appropriate times and in appropriate areas.

3. Whitford's motion to amend his complaint (Doc. 80) is **denied.**

4. As stated in this Court's previous Order, both parties' Motion for Summary Judgment were **granted in part**. (Doc. 73.) The Clerk of Court is directed to enter judgment pursuant to Fed. R. Civ. P. 58.

DATED this 10th day of April 2024.

_____
Brian Morris, Chief District Judge
United States District Court